| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Shannon Doyle, Esq. (SBN 207291)<br>Ghidotti \| Berger LLP<br>1920 Old Tustin Ave<br>Santa Ana, CA 92705<br>Ph: 949-427-2010<br>Fax: 949-427-2732<br>bknotifications@ghidottiberger.com<br>25-005215-7 | |

☐ *Movant appearing without an attorney*
☒ *Attorney for Movant*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>MLM OREGON, LLC | CASE NO.: 2:26-bk-12319-BB |
|---|---|
| | CHAPTER: 11 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 07/21/2026 |
| | TIME: 10:00 a.m. |
| Debtor(s). | COURTROOM: 1539 |

**Movant:** U.S. Bank Trust Company, National Association, not in its individual capacity, but solely as trustee on behalf of PRPM 2024-NQM2 Trust, its successors and/or assignees

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  06/30/2026

Ghidotti Berger, LLP
Printed name of law firm (if applicable)

Shannon Doyle, Esq. (SBN 207291)
Printed name of individual Movant or attorney for Movant

/s/ Shannon Doyle
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 15985 N Applegate Rd
   *Unit/suite number*:
   *City, state, zip code*: Grants Pass, OR 97527

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _2____):  Deed of Trust recorded on <u>01/31/2024</u> as Document No. <u>2024-002028</u> in Jackson County.

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13 was filed on (*date*) _03/11/2026__.

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay**:

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

      (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

      (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

      (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

      (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

      (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

      (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

      (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(3) ☐ (*Chapter 12 or 13 cases only*)

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion:  (D*eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other:
Exhibits: (1- Promissory Note, 2- Recorded Deed of Trust, 3- Assignment, 4- Broker's Price Opinion, 5- Debtor's Schedule A, D, 6- Payoff, 7-Recorded Notice of Default, 8- Recorded Notice of Sale)

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  06/30/2026

Ghidotti Berger, LLP
_____
Printed name of law firm (*if applicable*)
 Shannon Doyle, Esq. (SBN 207291)
_____
Printed name of individual Movant or attorney for Movant

/s/ Shannon Doyle
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## REAL PROPERTY DECLARATION

I, (*print name of Declarant*) _Lisa  L  Johnson, AVP Bk_, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☒ I am employed by Movant as (*state title and capacity*):

   c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 1_____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 2 & 3 .

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

      *Street address*: 15985 N Applegate Rd
      *Unit/suite no.*:
      *City, state, zip code*: Grants Pass, OR 97527

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
      See attached Exhibit 2 for recorded Deed of Trust

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

a. ☐ Debtor's principal residence     b. ☒ Other residence
c. ☐ Multi-unit residential     d. ☐ Commercial
e. ☐ Industrial     f. ☐ Vacant land
g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

a. ☒ Sole owner

b. ☐ Co-owner(s) (*specify*):

c. ☐ Lienholder (*specify*):

d. ☐ Other (*specify*):

e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.

     The deed was recorded on (*date*) _____.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
that encumbers the Property.

a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 2____.

b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit 1____.

c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit 3____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 2,137,500.00 |
| b. | Accrued interest: | $ | $ | $ 264,815.78 |
| c. | Late charges | $ | $ | $ 5,076.54 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 14,762.00 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 24,557.21 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of (*date*): | $ | $ | $2,446,711.53 |

h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

a. Notice of default recorded on (*date*) 09/29/2025__ or ☐ none recorded.

b. Notice of sale recorded on (*date*) 01/12/2026__ or ☐ none recorded.

c. Foreclosure sale originally scheduled for (*date*) 02/09/2026__ or ☐ none scheduled.

d. Foreclosure sale currently scheduled for (*date*) 06/18/2026__ or ☐ none scheduled.

e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017         Page 7         F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ 19,848.32 _____ for the month of June _____ 2026 .

    b. Number of payments that have come due and were not made: 15 . Total amount: $ 297,977.66 _____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $ 19,848.32 _____ will come due on (*date*) 07/01/2026 , and on the 1st day of each month thereafter. If the payment is not received within 15 days of said due date, a late charge of $ Per the Note _____ will be charged to the loan.

    d. The fair market value of the Property is $ 2,750,000.00 _____ , established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____ .

        (2) ☒ A real estate broker or other expert's declaration regarding value is attached as Exhibit 4 .

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____ .

        (4) ☒ Other (*specify*):
        Broker's Price Opinion attached hereto as Exhibit "4".

    e. **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Movant | $ | $ 2,446,711.53 |
| 2nd deed of trust: | Golden State Bank | $  330,785.22 | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ 2,777,496.75 | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 5 and consists of:

        (1) ☐ Preliminary title report.

        (2) ☒ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 303,288.47 (before cost of sale) and is 11 % of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ -27,496.75 .

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 8                                    **F 4001-1.RFS.RP.MOTION**

i. ☒ Estimated costs of sale: $ 220,000.00 _____ (estimate based upon  8 ____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                        $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                        $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                        $[                    ]

          TOTAL POSTPETITION DELINQUENCY:                        $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____    received on (*date*) _____
$_____    received on (*date*) _____
$_____    received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      2. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      3. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 10                          F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 6/30/2026 | Lisa L. Johnson | _(signature)_ |
|---|---|---|
| Date | Printed name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**

**I.**

**INTRODUCTION**

MLM Oregon LLC ("Debtor") commenced this Chapter 11 case on March 11, 2026, to stop Movant's foreclosure sale scheduled for March 12, 2026. Movant holds a first-priority deed of trust against the Property located at 15985 N. Applegate, Grants Pass, Oregon, securing a loan with a payoff balance of $2,429,467.37 as of May 15, 2026, that continues to accrue interest at $556.34 per day. The Debtor has failed to make contractually required payments as of April 1, 2025 and has failed to maintain property taxes or hazard insurance, resulting in a reinstatement arrearage of $278,129.34. Secured Creditor has an 11 percent equity cushion (3% after costs of sale), which is insufficient to provide adequate protection. Moreover, the Property lacks overall equity, rendering it unnecessary for an effective reorganization. Because "cause" exists under 11 U.S.C. § 362(d)(1), and the Debtor cannot satisfy § 362(d)(2), relief from the automatic stay is warranted.

**II.**
**ARGUMENT**

A.      **STANDARDS FOR RELIEF FROM STAY**

The automatic stay imposed by 11 U.S.C. § 362(a) is not absolute. While it serves as a fundamental protection for debtors, it was never intended to operate as a sword to the detriment of secured creditors whose interests are left unprotected. Section 362(d) expressly authorizes the Court to grant relief from the stay where cause exists, including the absence of

adequate protection, or where the debtor lacks equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(1), (2).

**B.**     **RELIEF IS WARRANTED UNDER § 362(d)(1) FOR LACK OF ADEQUATE PROTECTION**

Relief from stay is appropriate under 11 U.S.C. § 362(d)(1), which authorizes the Court to lift the stay "for cause," including the lack of adequate protection. Adequate protection is commonly established through the existence of a sufficient equity cushion. Where such a cushion is thin or nonexistent, cause for relief exists as a matter of law.

The Ninth Circuit has held that an equity cushion of approximately 20% generally constitutes adequate protection. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1401 (9th Cir. 1984). Bankruptcy courts within this Circuit have consistently applied that benchmark. See *Downey Sav. & Loan Ass'n v. Helionetics, Inc. (In re Helionetics, Inc.)*, 70 B.R. 433, 440 (Bankr. C.D. Cal. 1987) (finding a 20.4% equity cushion sufficient).

Here, no such cushion exists and Debtor is not making adequate protection payments. Pursuant to a broker's price opinion, the Property is valued at $2,750,000.00 (*See* Exhibit 4). Movant's payoff good through May 15, 2026 is $2,429,467.37, accruing interest at $556.34 per day, rendering an 11% equity cushion (before costs of sale). Such lack of equity provides no protection against market volatility, accruing interest, or additional costs and expenses. The risk of further erosion falls entirely on Movant.

Continuation of the stay merely delays enforcement of Movant's rights while compounding its losses. Accordingly, cause exists for relief from the automatic stay under § 362(d)(1).

**C.**     **RELIEF IS INDEPENDENTLY WARRANTED UNDER § 362(D)(2) FOR LACK**

MEMORANDUM OF POINTS AND AUTHORITIES

**OF EQUITY AND NOT NECESSARY FOR AN EFFECTIVE**

**REORGANIZATION**

Section 362(d)(2) mandates relief from the automatic stay where the debtor lacks equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). The movant bears the burden of establishing the debtor's lack of equity, while the debtor bears the burden of demonstrating that the property is necessary to an effective reorganization. 11 U.S.C. § 362(g); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 375–76 (1988).

    **1.  The Debtor Has No Equity in the Property**

For purposes of § 362(d)(2)(A), the Ninth Circuit defines "equity" as the difference between the property's fair market value and the total amount of liens and encumbrances against it. *Stewart v. Gurley*, 745 F.2d 1194, 1196 (9th Cir. 1984). When the secured debt and anticipated costs of sale exceed the property's value, the debtor lacks equity as a matter of law. Here, the Property has a fair market value of $2,750,000.00. Against that value stands Movant's secured payoff in the amount of $2,429,467.37, which continues to accrue interest at $556.34 per day. The Property is further encumbered by a second lien in the amount of $330,785.22, resulting in total secured debt of $2,760,252.59.

In addition, any sale of the Property would necessarily incur costs conservatively estimated at eight percent (8%) of the Property's value, or approximately $220,000.00. When those unavoidable sale costs are considered, the Property is burdened by obligations of approximately $2,980,252.59. Accordingly, the Property has zero equity.

    **2.  The Property Is Not Necessary to an Effective Reorganization**

MEMORANDUM OF POINTS AND AUTHORITIES

Because the Movant has established the absence of equity, the burden shifts to the Debtor to demonstrate that the Property is necessary to an effective reorganization. 11 U.S.C. § 362(g)(2). In a Chapter 11 case, this requires more than a speculative or aspirational reorganization strategy. The debtor must show "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers at* 376.

The Debtor cannot meet that burden here. The Property is underwater, continues to accrue interest daily, and generates no income that could support adequate protection or a confirmable plan. Any proposed reorganization would necessarily depend on unsupported assumptions regarding refinancing, lien modification, or a sale yielding proceeds in excess of the Property's value and secured claims—assumptions that are foreclosed by the undisputed financial realities. Courts routinely grant relief under § 362(d)(2) where, as here, the debtor lacks equity and cannot demonstrate a feasible reorganization that meaningfully relies on the subject property. See, e.g., *In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 75–76 (9th Cir. BAP 1994).

Accordingly, because the Debtor has no equity in the Property and cannot establish that the Property is necessary to an effective reorganization, relief from the automatic stay is required under § 362(d)(2).

**D.**      **THE 14 DAY STAY PROVISIONS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(A)(3) SHOULD BE ORDERED TO BE INAPPLICABLE TO ANY ORDER GRANTING THE MOTION**

Federal Rule of Bankruptcy Procedure 4001(a)(3), which dictate a mandatory 14-day stay on any order granting the Motion, should not be misconstrued as an opportunity for unwarranted delays in the effectiveness of such an order. There exists absolutely no justifiable cause for postponing the enactment of any order favoring the Motion.

4

MEMORANDUM OF POINTS AND AUTHORITIES

## III.
## CONCLUSION

Each of the required grounds under 11 U.S.C 362(d) for relief from stay is squarely present here. Movant's interest in the Property is eroding daily, unprotected by an adequate equity cushion or payments. Further, the total liens against the Property result in negative equity. The Bankruptcy Code does not require a secured creditor to endure ongoing financial harm under these circumstances. Relief from the automatic stay is both warranted and necessary to permit Movant to exercise its state law remedies and prevent further diminution of its secured position.

Based on the foregoing reasons, Movant's Motion must be granted.

Dated: 06/30/2026

/s/ Shannon Doyle
Shannon Doyle, Esq.
Attorney for Movant
U.S. Bank Trust Company, National
Association, not in its individual capacity, but
solely as trustee on behalf of PRPM 2024-
NQM2 Trust, its successors and/or assigns

5

MEMORANDUM OF POINTS AND AUTHORITIES

Exhibit 1

MIN: ████████████    Loan Number: ████████

# NOTE

January 26, 2024                    LOS ANGELES                    CALIFORNIA
[Note Date]                              [City]                              [State]

15985 North Applegate Road, Grants Pass, Oregon 97527

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan in the amount of U.S. $2,137,500.00        (the "Principal") that I have received from GREENBOX LOANS INC, A CALIFORNIA CORPORATION

(the "Lender"),

I promise to pay the Principal, plus interest, to the order of the Lender. I will make all payments under this Note in U.S. currency in the form of cash, check, money order, or other payment method accepted by Lender.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of the Principal has been paid. I will pay interest at a yearly rate of        9.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month. This amount is called my "Monthly Payment."

I will make my Monthly Payment on the    1st    day of each month beginning on        March 1        , 2024        . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each Monthly Payment will be applied as of its scheduled due date and will be applied to interest before the Principal. If, on February 1, 2054        , I still owe amounts under this Note, I will pay those amounts on that date, which is called the "Maturity Date."

I will make my Monthly Payments at 3250 WILSHIRE BLVD. #1900, LOS ANGELES, CALIFORNIA 90010

or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My Monthly Payment will be in the amount of U.S. $ 16,921.88        . This payment amount does not include any property taxes, insurance, or other charges that I may be required to pay each month.
** See attached Interest Only Note Addendum.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will notify the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the Monthly Payments then due under this Note.

MULTISTATE FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  07/2021                    Page 1 of 4                    ☆ DocMagic

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my Monthly Payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If applicable law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Monthly Payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000 % of my overdue Monthly Payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each Monthly Payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of unpaid Principal, all the interest that I owe on that amount, and other charges due under this Note (the "Default Balance"). That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

If I am in default and the Note Holder does not require me to pay the Default Balance immediately as described above, the Note Holder will still have the right to do so if I continue to be in default or if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay the Default Balance immediately as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees and costs.

## 7. GIVING OF NOTICES

### (A) Notice to Borrower

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it, or by mailing it by first class mail, to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. I will promptly notify the Note Holder of any change to my physical address and of any change to my mailing address. Unless applicable law requires otherwise, notice may instead be sent by e-mail or other electronic communication if agreed to by me and the Note Holder in writing and if I have provided the Note Holder with my current e-mail address or other electronic address. If I have agreed with the Note Holder that notice may be given by e-mail or other electronic communication, I will promptly notify the Note Holder of any changes to my e-mail address or other electronic address.

**(B)  Notice to Note Holder**

Any notice that I must give to the Note Holder under this Note will be delivered by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Mortgage Deed, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument also describes how and under what conditions I may be required to make immediate payment of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY

_____(Seal)
Libby F. Markowitz                           -Borrower

Universal Loan ID: ████████████████████
Loan Originator: Raymond Eshaghian, NMLSR ID ████████
Loan Originator Organization: Greenbox Loans, Inc., NMLSR ID
████████████

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200   07/2021                    Page 4 of 4

☆DocMagic

Loan Number: ███████

# INTEREST-ONLY ADDENDUM
# TO FIXED RATE NOTE

Property Address: 15985 North Applegate Road, Grants Pass, Oregon 97527

**THIS INTEREST-ONLY ADDENDUM** ("ADDENDUM") is made this 26th day of January, 2024 and is incorporated into and intended to form a part of the Fixed Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to **GREENBOX LOANS INC, A CALIFORNIA CORPORATION** (the "Lender").

**THIS ADDENDUM** supersedes and replaces Sections 3(A), 3(B), 4, and 6(A) of the Note. This Addendum does not supersede, replace or revise any other Section of the Note.

## 3.   PAYMENTS

**(A)   Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first 120 months (the "Interest Only Period"), and then will consist of principal and interest.

I will make my monthly payment on the 1st day of each month beginning on March 1, 2024. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on February 1, 2054, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3250 WILSHIRE BLVD. #1900, LOS ANGELES, CALIFORNIA 90010

or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

I will make payments in the amount sufficient to pay interest only as it accrues on the unpaid principal balance.

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes.

If the partial Prepayment is made during the Interest Only Period, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   5.000 % of my overdue payment of interest during the Interest Only Period.  At the end of the Interest Only Period, it will be   5.000 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to Fixed Rate Note.

MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY

_____     1-30-24     _____
Borrower Libby F Markowitz          Date        Borrower                       Date

_____              _____
Borrower                            Date        Borrower                       Date

_____              _____
Borrower                            Date        Borrower                       Date

INTEREST ONLY ADDENDUM TO FIXED RATE NOTE
©2007 DOCMAGIC, INC.
03/28/07                          Page 2 of 2                          ☆ DocMagic

## ALLONGE TO PROMISSORY NOTE

For purposes of further endorsement of the following described Note, this Allonge is affixed and becomes a permanent part of said Note:

Loan Number: █████████

Note Date: 1/26/2024

Loan Amount: 2,137,500.00

Borrower Name: LIBBY F MARKOWITZ

Co-Borrower Name:

Lender: Greenbox Loans Inc., a California Corporation

Property Address: 15985 NORTH APPLEGATE ROAD
GRANTS PASS, OR 97527

PAY TO THE ORDER OF

WITHOUT RECOURSE

By: _____
                    Alek Alevizos,
As Director Secondary Marketing of Greenbox Loans, Inc.

# Exhibit 2

After Recording Return To:
GREENBOX LOANS INC C/O DOCPROBE
1133 OCEAN AVENUE MAIL STOP CODE: DP913
LAKEWOOD, NEW JERSEY 08701
Loan Number: 2023120154

Amerititle ▓▓▓▓

| Jackson County Official Records | **2024-002028** |
|---|---|
| R-TD | |
| Stn=7 HALLEV | **01/31/2024 01:37:02 PM** |
| $130.00 $10.00 $13.00 $13.00 $11.00 | **$241.00** |
| $60.00 $4.00 | |

I, Christine Walker, County Clerk for Jackson County, Oregon, certify that the instrument identified herein was recorded in the Clerk records.

Christine Walker - County Clerk

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**MIN:** ▓▓▓▓▓▓▓▓                    **MERS** ▓▓▓▓▓▓▓▓

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined under the caption TRANSFER OF RIGHTS IN THE PROPERTY and in Sections 3, 4, 10, 11, 12, 16, 19, 24, and 25. Certain rules regarding the usage of words used in this document are also provided in Section 17.

**Parties**

(A) **"Borrower"** is   MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY

currently residing at  712 N Beverly Dr, Beverly Hills, California 90210

Borrower is the grantor under this Security Instrument.
(B)  **"Lender"** is  GREENBOX LOANS INC

Lender is a  CALIFORNIA CORPORATION                    organized and existing under the laws of CALIFORNIA                  . Lender's address is 3250 WILSHIRE BLVD. #1900, LOS ANGELES, CALIFORNIA 90010

Lender is the beneficiary under this Security Instrument. The term "Lender" includes any successors and assigns of Lender.
(C)  **"Trustee"** is  AmeriTitle, Inc.

---

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021                                   ☆ DocMagic
Page 1 of 19

Trustee's address is

The term "Trustee" includes any substitute/successor Trustee.

**(D)** **"MERS"** is the Mortgage Electronic Registration Systems, Inc. Lender has appointed MERS as the nominee for Lender for this Loan, and attached a MERS Rider to this Security Instrument, to be executed by Borrower, which further describes the relationship between Lender and MERS, and which is incorporated into and amends and supplements this Security Instrument.

**Documents**

**(E)** **"Note"** means the promissory note dated January 26, 2024, and signed by each Borrower who is legally obligated for the debt under that promissory note, that is in either (i) paper form, using Borrower's written pen and ink signature, or (ii) electronic form, using Borrower's adopted Electronic Signature in accordance with the UETA or E-SIGN, as applicable. The Note evidences the legal obligation of each Borrower who signed the Note to pay Lender TWO MILLION ONE HUNDRED THIRTY-SEVEN THOUSAND FIVE HUNDRED AND 00/100 Dollars (U.S. $ 2,137,500.00 ) plus interest. Each Borrower who signed the Note has promised to pay this debt in regular monthly payments and to pay the debt in full not later than February 1, 2054

**(F)** **"Riders"** means all Riders to this Security Instrument that are signed by Borrower. All such Riders are incorporated into and deemed to be a part of this Security Instrument. The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Other(s) [specify]: |
| ☐ 1-4 Family Rider | ☐ Planned Unit Development Rider | |
| ☒ Second Home Rider | ☒ MERS Rider | |

**(G)** **"Security Instrument"** means this document, which is dated January 26, 2024, together with all Riders to this document.

**Additional Definitions**

**(H)** **"Applicable Law"** means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association, or similar organization.

**(J)** **"Default"** means: (i) the failure to pay any Periodic Payment or any other amount secured by this Security Instrument on the date it is due; (ii) a breach of any representation, warranty, covenant, obligation, or agreement in this Security Instrument; (iii) any materially false, misleading, or inaccurate information or statement to Lender provided by Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent, or failure to provide Lender with material information in connection with the Loan, as described in Section 8; or (iv) any action or proceeding described in Section 12(e).

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038   07/2021
Page 2 of 19
☆DocMagic

(K)  **"Electronic Fund Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone or other electronic device capable of communicating with such financial institution, wire transfers, and automated clearinghouse transfers.

(L)  **"Electronic Signature"** means an "Electronic Signature" as defined in the UETA or E-SIGN, as applicable.

(M)  **"E-SIGN"** means the Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 *et seq.*), as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

(N)  **"Escrow Items"** means: (i) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property; (ii) leasehold payments or ground rents on the Property, if any; (iii) premiums for any and all insurance required by Lender under Section 5; (iv) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 11; and (v) Community Association Dues, Fees, and Assessments if Lender requires that they be escrowed beginning at Loan closing or at any time during the Loan term.

(O)  **"Loan"** means the debt obligation evidenced by the Note, plus interest, any prepayment charges, costs, expenses, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(P)  **"Loan Servicer"** means the entity that has the contractual right to receive Borrower's Periodic Payments and any other payments made by Borrower, and administers the Loan on behalf of Lender. Loan Servicer does not include a sub-servicer, which is an entity that may service the Loan on behalf of the Loan Servicer.

(Q)  **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(R)  **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or Default on, the Loan.

(S)  **"Partial Payment"** means any payment by Borrower, other than a voluntary prepayment permitted under the Note, which is less than a full outstanding Periodic Payment.

(T)  **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3.

(U)  **"Property"** means the property described below under the heading "TRANSFER OF RIGHTS IN THE PROPERTY."

(V)  **"Rents"** means all amounts received by or due Borrower in connection with the lease, use, and/or occupancy of the Property by a party other than Borrower.

(W)  **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter. When used in this Security Instrument, "RESPA" refers to all requirements and restrictions that would apply to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(X)  **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

(Y)  **"UETA"** means the Uniform Electronic Transactions Act, as enacted by the jurisdiction in which the Property is located, as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021

☆ DocMagic

Page 3 of 19

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                            of J̶o̶s̶e̶p̶h̶i̶n̶e̶ Jackson                                         :
　　　　[Type of Recording Jurisdiction]　　　　　　　　　　[Name of Recording Jurisdiction]
SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF
A.P.N.: 108-000-99

which currently has the address of 15985 North Applegate Road
　　　　　　　　　　　　　　　　　　　　　　　　[Street]
Grants Pass                                    , Oregon   97527            ("Property Address");
　　　　　　[City]　　　　　　　　　　　　　　　　　　　　[Zip Code]

TOGETHER WITH all the improvements now or subsequently erected on the property, including replacements and additions to the improvements on such property, all property rights, including, without limitation, all easements, appurtenances, royalties, mineral rights, oil or gas rights or profits, water rights, and fixtures now or subsequently a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER REPRESENTS, WARRANTS, COVENANTS, AND AGREES that: (i) Borrower lawfully owns and possesses the Property conveyed in this Security Instrument in fee simple or lawfully has the right to use and occupy the Property under a leasehold estate; (ii) Borrower has the right to grant and convey the Property or Borrower's leasehold interest in the Property; and (iii) the Property is unencumbered, and not subject to any other ownership interest in the Property, except for encumbrances and ownership interests of record. Borrower warrants generally the title to the Property and covenants and agrees to defend the title to the Property against all claims and demands, subject to any encumbrances and ownership interests of record as of Loan closing.

THIS SECURITY INSTRUMENT combines uniform covenants for national use with limited variations and non-uniform covenants that reflect specific Oregon state requirements to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.　Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower will pay each Periodic Payment when due. Borrower will also pay any prepayment charges and late charges due under the Note, and any other amounts due under this Security Instrument. Payments due under the Note and this Security Instrument must be made in U.S. currency. If any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)　　　　　☆DocMagic
Form 3038   07/2021
　　　　　　　　　　　　　　　　Page 4 of 19

by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (d) Electronic Fund Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 16. Lender may accept or return any Partial Payments in its sole discretion pursuant to Section 2.

Any offset or claim that Borrower may have now or in the future against Lender will not relieve Borrower from making the full amount of all payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Acceptance and Application of Payments or Proceeds.**

**(a) Acceptance and Application of Partial Payments.** Lender may accept and either apply or hold in suspense Partial Payments in its sole discretion in accordance with this Section 2. Lender is not obligated to accept any Partial Payments or to apply any Partial Payments at the time such payments are accepted, and also is not obligated to pay interest on such unapplied funds. Lender may hold such unapplied funds until Borrower makes payment sufficient to cover a full Periodic Payment, at which time the amount of the full Periodic Payment will be applied to the Loan. If Borrower does not make such a payment within a reasonable period of time, Lender will either apply such funds in accordance with this Section 2 or return them to Borrower. If not applied earlier, Partial Payments will be credited against the total amount due under the Loan in calculating the amount due in connection with any foreclosure proceeding, payoff request, loan modification, or reinstatement. Lender may accept any payment insufficient to bring the Loan current without waiver of any rights under this Security Instrument or prejudice to its rights to refuse such payments in the future.

**(b) Order of Application of Partial Payments and Periodic Payments.** Except as otherwise described in this Section 2, if Lender applies a payment, such payment will be applied to each Periodic Payment in the order in which it became due, beginning with the oldest outstanding Periodic Payment, as follows: first to interest and then to principal due under the Note, and finally to Escrow Items. If all outstanding Periodic Payments then due are paid in full, any payment amounts remaining may be applied to late charges and to any amounts then due under this Security Instrument. If all sums then due under the Note and this Security Instrument are paid in full, any remaining payment amount may be applied, in Lender's sole discretion, to a future Periodic Payment or to reduce the principal balance of the Note.

If Lender receives a payment from Borrower in the amount of one or more Periodic Payments and the amount of any late charge due for a delinquent Periodic Payment, the payment may be applied to the delinquent payment and the late charge.

When applying payments, Lender will apply such payments in accordance with Applicable Law.

**(c) Voluntary Prepayments.** Voluntary prepayments will be applied as described in the Note.

**(d) No Change to Payment Schedule.** Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.**

**(a) Escrow Requirement; Escrow Items.** Borrower must pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum of money to provide for payment of amounts due for all Escrow Items (the "Funds"). The amount of the Funds required to be paid each month may change during the term of the Loan. Borrower must promptly furnish to Lender all notices or invoices of amounts to be paid under this Section 3.

**(b) Payment of Funds; Waiver.** Borrower must pay Lender the Funds for Escrow Items unless Lender waives this obligation in writing. Lender may waive this obligation for any Escrow Item at any time. In the event of such waiver, Borrower must pay directly, when and where payable, the amounts due for any Escrow Items subject to the waiver. If Lender has waived the requirement to pay Lender the Funds for any or all Escrow Items, Lender may require Borrower to provide proof of direct payment of those items within such time period as Lender may require.

---

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038   07/2021
☆DocMagic

Page 5 of 19

Order

2024-2028 TDD 01-31-2024

Requested By: g.shalini, Printed: 8/4/2025 10:55 AM

Borrower's obligation to make such timely payments and to provide proof of payment is deemed to be a covenant and agreement of Borrower under this Security Instrument. If Borrower is obligated to pay Escrow Items directly pursuant to a waiver, and Borrower fails to pay timely the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to pay such amount and Borrower will be obligated to repay to Lender any such amount in accordance with Section 9.

Lender may withdraw the waiver as to any or all Escrow Items at any time by giving a notice in accordance with Section 16; upon such withdrawal, Borrower must pay to Lender all Funds for such Escrow Items, and in such amounts, that are then required under this Section 3.

(c) **Amount of Funds; Application of Funds.** Lender may, at any time, collect and hold Funds in an amount up to, but not in excess of, the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due in accordance with Applicable Law.

The Funds will be held in an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender will apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender may not charge Borrower for: (i) holding and applying the Funds; (ii) annually analyzing the escrow account; or (iii) verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on the Funds, Lender will not be required to pay Borrower any interest or earnings on the Funds. Lender will give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

(d) **Surplus; Shortage and Deficiency of Funds.** In accordance with RESPA, if there is a surplus of Funds held in escrow, Lender will account to Borrower for such surplus. If Borrower's Periodic Payment is delinquent by more than 30 days, Lender may retain the surplus in the escrow account for the payment of the Escrow Items. If there is a shortage or deficiency of Funds held in escrow, Lender will notify Borrower and Borrower will pay to Lender the amount necessary to make up the shortage or deficiency in accordance with RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender will promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower must pay (a) all taxes, assessments, charges, fines, and impositions attributable to the Property which have priority or may attain priority over this Security Instrument, (b) leasehold payments or ground rents on the Property, if any, and (c) Community Association Dues, Fees, and Assessments, if any. If any of these items are Escrow Items, Borrower will pay them in the manner provided in Section 3.

Borrower must promptly discharge any lien that has priority or may attain priority over this Security Instrument unless Borrower: (aa) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing under such agreement; (bb) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which Lender determines, in its sole discretion, operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (cc) secures from the holder of the lien an agreement satisfactory to Lender that subordinates the lien to this Security Instrument (collectively, the "Required Actions"). If Lender determines that any part of the Property is subject to a lien that has priority or may attain priority over this Security Instrument and Borrower has not taken any of the Required Actions in regard to such lien, Lender may give Borrower a notice identifying the lien. Within 10 days after the date on which that notice is given, Borrower must satisfy the lien or take one or more of the Required Actions.

5. **Property Insurance.**

(a) **Insurance Requirement; Coverages.** Borrower must keep the improvements now existing or subsequently erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance. Borrower must maintain the types of insurance Lender requires in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term

---

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021

☆ DocMagic

Page 6 of 19



of the Loan, and may exceed any minimum coverage required by Applicable Law. Borrower may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove Borrower's choice, which right will not be exercised unreasonably.

(b) **Failure to Maintain Insurance.** If Lender has a reasonable basis to believe that Borrower has failed to maintain any of the required insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and at Borrower's expense. Unless required by Applicable Law, Lender is under no obligation to advance premiums for, or to seek to reinstate, any prior lapsed coverage obtained by Borrower. Lender is under no obligation to purchase any particular type or amount of coverage and may select the provider of such insurance in its sole discretion. Before purchasing such coverage, Lender will notify Borrower if required to do so under Applicable Law. Any such coverage will insure Lender, but might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect, but not exceeding the coverage required under Section 5(a). Borrower acknowledges that the cost of the insurance coverage so obtained may significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender for costs associated with reinstating Borrower's insurance policy or with placing new insurance under this Section 5 will become additional debt of Borrower secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(c) **Insurance Policies.** All insurance policies required by Lender and renewals of such policies: (i) will be subject to Lender's right to disapprove such policies; (ii) must include a standard mortgage clause; and (iii) must name Lender as mortgagee and/or as an additional loss payee. Lender will have the right to hold the policies and renewal certificates. If Lender requires, Borrower will promptly give to Lender proof of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy must include a standard mortgage clause and must name Lender as mortgagee and/or as an additional loss payee.

(d) **Proof of Loss; Application of Proceeds.** In the event of loss, Borrower must give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Any insurance proceeds, whether or not the underlying insurance was required by Lender, will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and determines that Lender's security will not be lessened by such restoration or repair.

If the Property is to be repaired or restored, Lender will disburse from the insurance proceeds any initial amounts that are necessary to begin the repair or restoration, subject to any restrictions applicable to Lender. During the subsequent repair and restoration period, Lender will have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Lender will not be required to pay Borrower any interest or earnings on such insurance proceeds unless Lender and Borrower agree in writing or Applicable Law requires otherwise. Fees for public adjusters, or other third parties, retained by Borrower will not be paid out of the insurance proceeds and will be the sole obligation of Borrower.

If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the insurance proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021

☆ DocMagic



(e) **Insurance Settlements; Assignment of Proceeds.** If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 26 or otherwise, Borrower is unconditionally assigning to Lender (i) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note and this Security Instrument, and (ii) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, to the extent that such rights are applicable to the coverage of the Property. If Lender files, negotiates, or settles a claim, Borrower agrees that any insurance proceeds may be made payable directly to Lender without the need to include Borrower as an additional loss payee. Lender may use the insurance proceeds either to repair or restore the Property (as provided in Section 5(d)) or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower must occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and must continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

7. **Preservation, Maintenance, and Protection of the Property; Inspections.** Borrower will not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower must maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless Lender determines pursuant to Section 5 that repair or restoration is not economically feasible, Borrower will promptly repair the Property if damaged to avoid further deterioration or damage.

If insurance or condemnation proceeds are paid to Lender in connection with damage to, or the taking of, the Property, Borrower will be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower remains obligated to complete such repair or restoration.

Lender may make reasonable entries upon and inspections of the Property. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

(a) **Protection of Lender's Interest.** If: (i) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (ii) there is a legal proceeding or government order that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that has priority or may attain priority over this Security Instrument, or to enforce laws or regulations); or (iii) Lender reasonably believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the

Property and/or rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (I) paying any sums secured by a lien that has priority or may attain priority over this Security Instrument; (II) appearing in court; and (III) paying: (A) reasonable attorneys' fees and costs; (B) property inspection and valuation fees; and (C) other fees incurred for the purpose of protecting Lender's interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, exterior and interior inspections of the Property, entering the Property to make repairs, changing locks, replacing or boarding up doors and windows, draining water from pipes, eliminating building or other code violations or dangerous conditions, and having utilities turned on or off. Although Lender may take action under this Section 9, Lender is not required to do so and is not under any duty or obligation to do so. Lender will not be liable for not taking any or all actions authorized under this Section 9.

(b) **Avoiding Foreclosure; Mitigating Losses.** If Borrower is in Default, Lender may work with Borrower to avoid foreclosure and/or mitigate Lender's potential losses, but is not obligated to do so unless required by Applicable Law. Lender may take reasonable actions to evaluate Borrower for available alternatives to foreclosure, including, but not limited to, obtaining credit reports, title reports, title insurance, property valuations, subordination agreements, and third-party approvals. Borrower authorizes and consents to these actions. Any costs associated with such loss mitigation activities may be paid by Lender and recovered from Borrower as described below in Section 9(c), unless prohibited by Applicable Law.

(c) **Additional Amounts Secured.** Any amounts disbursed by Lender under this Section 9 will become additional debt of Borrower secured by this Security Instrument. These amounts may bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(d) **Leasehold Terms.** If this Security Instrument is on a leasehold, Borrower will comply with all the provisions of the lease. Borrower will not surrender the leasehold estate and interests conveyed, or terminate or cancel the ground lease. Borrower will not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title will not merge unless Lender agrees to the merger in writing.

**10. Assignment of Rents.**

(a) **Assignment of Rents.** If the Property is leased to, used by, or occupied by a third party ("Tenant"), Borrower is unconditionally assigning and transferring to Lender any Rents, regardless of to whom the Rents are payable. Borrower authorizes Lender to collect the Rents, and agrees that each Tenant will pay the Rents to Lender. However, Borrower will receive the Rents until (i) Lender has given Borrower notice of Default pursuant to Section 26, and (ii) Lender has given notice to the Tenant that the Rents are to be paid to Lender. This Section 10 constitutes an absolute assignment and not an assignment for additional security only.

(b) **Notice of Default.** If Lender gives notice of Default to Borrower: (i) all Rents received by Borrower must be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender will be entitled to collect and receive all of the Rents; (iii) Borrower agrees to instruct each Tenant that Tenant is to pay all Rents due and unpaid to Lender upon Lender's written demand to the Tenant; (iv) Borrower will ensure that each Tenant pays all Rents due to Lender and will take whatever action is necessary to collect such Rents if not paid to Lender; (v) unless Applicable Law provides otherwise, all Rents collected by Lender will be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, reasonable attorneys' fees and costs, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to any other sums secured by this Security Instrument; (vi) Lender, or any judicially appointed receiver, will be liable to account for only those Rents actually received; and (vii) Lender will be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

(c)  **Funds Paid by Lender.** If the Rents are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds paid by Lender for such purposes will become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

(d)  **Limitation on Collection of Rents.** Borrower may not collect any of the Rents more than one month in advance of the time when the Rents become due, except for security or similar deposits.

(e)  **No Other Assignment of Rents.** Borrower represents, warrants, covenants, and agrees that Borrower has not signed any prior assignment of the Rents, will not make any further assignment of the Rents, and has not performed, and will not perform, any act that could prevent Lender from exercising its rights under this Security Instrument.

(f)  **Control and Maintenance of the Property.** Unless required by Applicable Law, Lender, or a receiver appointed under Applicable Law, is not obligated to enter upon, take control of, or maintain the Property before or after giving notice of Default to Borrower. However, Lender, or a receiver appointed under Applicable Law, may do so at any time when Borrower is in Default, subject to Applicable Law.

(g)  **Additional Provisions.** Any application of the Rents will not cure or waive any Default or invalidate any other right or remedy of Lender. This Section 10 does not relieve Borrower of Borrower's obligations under Section 6.

This Section 10 will terminate when all the sums secured by this Security Instrument are paid in full.

**11.  Mortgage Insurance.**

(a)  **Payment of Premiums; Substitution of Policy; Loss Reserve; Protection of Lender.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower will pay the premiums required to maintain the Mortgage Insurance in effect. If Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, and (i) the Mortgage Insurance coverage required by Lender ceases for any reason to be available from the mortgage insurer that previously provided such insurance, or (ii) Lender determines in its sole discretion that such mortgage insurer is no longer eligible to provide the Mortgage Insurance coverage required by Lender, Borrower will pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Borrower will continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use, and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve will be non-refundable, even when the Loan is paid in full, and Lender will not be required to pay Borrower any interest or earnings on such loss reserve.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower will pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 11 affects Borrower's obligation to pay interest at the Note rate.

(b)  **Mortgage Insurance Agreements.** Mortgage Insurance reimburses Lender for certain losses Lender may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy or coverage.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements may require the

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)                    ☆ DocMagic
Form 3038  07/2021

Page 10 of 19

 

mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. Any such agreements will not: (i) affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan; (ii) increase the amount Borrower will owe for Mortgage Insurance; (iii) entitle Borrower to any refund; or (iv) affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 (12 U.S.C. § 4901 *et seq.*), as it may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter ("HPA"). These rights under the HPA may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**12. Assignment and Application of Miscellaneous Proceeds; Forfeiture.**

**(a) Assignment of Miscellaneous Proceeds.** Borrower is unconditionally assigning the right to receive all Miscellaneous Proceeds to Lender and agrees that such amounts will be paid to Lender.

**(b) Application of Miscellaneous Proceeds upon Damage to Property.** If the Property is damaged, any Miscellaneous Proceeds will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and Lender's security will not be lessened by such restoration or repair. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

**(c) Application of Miscellaneous Proceeds upon Condemnation, Destruction, or Loss in Value of the Property.** In the event of a total taking, destruction, or loss in value of the Property, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property (each, a "Partial Devaluation") where the fair market value of the Property immediately before the Partial Devaluation is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the Partial Devaluation, a percentage of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument unless Borrower and Lender otherwise agree in writing. The amount of the Miscellaneous Proceeds that will be so applied is determined by multiplying the total amount of the Miscellaneous Proceeds by a percentage calculated by taking (i) the total amount of the sums secured immediately before the Partial Devaluation, and dividing it by (ii) the fair market value of the Property immediately before the Partial Devaluation. Any balance of the Miscellaneous Proceeds will be paid to Borrower.

---

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038   07/2021

☆ DocMagic

 

In the event of a Partial Devaluation where the fair market value of the Property immediately before the Partial Devaluation is less than the amount of the sums secured immediately before the Partial Devaluation, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not the sums are then due, unless Borrower and Lender otherwise agree in writing.

(d) **Settlement of Claims.** Lender is authorized to collect and apply the Miscellaneous Proceeds either to the sums secured by this Security Instrument, whether or not then due, or to restoration or repair of the Property, if Borrower (i) abandons the Property, or (ii) fails to respond to Lender within 30 days after the date Lender notifies Borrower that the Opposing Party (as defined in the next sentence) offers to settle a claim for damages. "Opposing Party" means the third party that owes Borrower the Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to the Miscellaneous Proceeds.

(e) **Proceeding Affecting Lender's Interest in the Property.** Borrower will be in Default if any action or proceeding begins, whether civil or criminal, that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a Default and, if acceleration has occurred, reinstate as provided in Section 20, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower is unconditionally assigning to Lender the proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property, which proceeds will be paid to Lender. All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order that Partial Payments are applied in Section 2(b).

**13. Borrower Not Released; Forbearance by Lender Not a Waiver.** Borrower or any Successor in Interest of Borrower will not be released from liability under this Security Instrument if Lender extends the time for payment or modifies the amortization of the sums secured by this Security Instrument. Lender will not be required to commence proceedings against any Successor in Interest of Borrower, or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument, by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, will not be a waiver of, or preclude the exercise of, any right or remedy by Lender.

**14. Joint and Several Liability; Signatories; Successors and Assigns Bound.** Borrower's obligations and liability under this Security Instrument will be joint and several. However, any Borrower who signs this Security Instrument but does not sign the Note: (a) signs this Security Instrument to mortgage, grant, and convey such Borrower's interest in the Property under the terms of this Security Instrument; (b) signs this Security Instrument to waive any applicable inchoate rights such as dower and curtesy and any available homestead exemptions; (c) signs this Security Instrument to assign any Miscellaneous Proceeds, Rents, or other earnings from the Property to Lender; (d) is not personally obligated to pay the sums due under the Note or this Security Instrument; and (e) agrees that Lender and any other Borrower can agree to extend, modify, forbear, or make any accommodations with regard to the terms of the Note or this Security Instrument without such Borrower's consent and without affecting such Borrower's obligations under this Security Instrument.

Subject to the provisions of Section 19, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, will obtain all of Borrower's rights, obligations, and benefits under this Security Instrument. Borrower will not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.

**15. Loan Charges.**

(a) **Tax and Flood Determination Fees.** Lender may require Borrower to pay (i) a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan, and (ii) either (A) a one-time charge for flood zone determination, certification, and tracking services, or (B) a one-time charge for flood

---

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021

☆ DocMagic



zone determination and certification services and subsequent charges each time remappings or similar changes occur that reasonably might affect such determination or certification. Borrower will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency, or any successor agency, at any time during the Loan term, in connection with any flood zone determinations.

(b) **Default Charges.** If permitted under Applicable Law, Lender may charge Borrower fees for services performed in connection with Borrower's Default to protect Lender's interest in the Property and rights under this Security Instrument, including: (i) reasonable attorneys' fees and costs; (ii) property inspection, valuation, mediation, and loss mitigation fees; and (iii) other related fees.

(c) **Permissibility of Fees.** In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

(d) **Savings Clause.** If Applicable Law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

16. **Notices; Borrower's Physical Address.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.

(a) **Notices to Borrower.** Unless Applicable Law requires a different method, any written notice to Borrower in connection with this Security Instrument will be deemed to have been given to Borrower when (i) mailed by first class mail, or (ii) actually delivered to Borrower's Notice Address (as defined in Section 16(c) below) if sent by means other than first class mail or Electronic Communication (as defined in Section 16(b) below). Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. If any notice to Borrower required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(b) **Electronic Notice to Borrower.** Unless another delivery method is required by Applicable Law, Lender may provide notice to Borrower by e-mail or other electronic communication ("Electronic Communication") if: (i) agreed to by Lender and Borrower in writing; (ii) Borrower has provided Lender with Borrower's e-mail or other electronic address ("Electronic Address"); (iii) Lender provides Borrower with the option to receive notices by first class mail or by other non-Electronic Communication instead of by Electronic Communication; and (iv) Lender otherwise complies with Applicable Law. Any notice to Borrower sent by Electronic Communication in connection with this Security Instrument will be deemed to have been given to Borrower when sent unless Lender becomes aware that such notice is not delivered. If Lender becomes aware that any notice sent by Electronic Communication is not delivered, Lender will resend such communication to Borrower by first class mail or by other non-Electronic Communication. Borrower may withdraw the agreement to receive Electronic Communications from Lender at any time by providing written notice to Lender of Borrower's withdrawal of such agreement.

(c) **Borrower's Notice Address.** The address to which Lender will send Borrower notice ("Notice Address") will be the Property Address unless Borrower has designated a different address by written notice to Lender. If Lender and Borrower have agreed that notice may be given by Electronic Communication, then Borrower may designate an Electronic Address as Notice Address. Borrower will promptly notify Lender of Borrower's change of Notice Address, including any changes to Borrower's Electronic Address if designated as Notice Address. If Lender specifies a procedure for reporting Borrower's change of Notice Address, then Borrower will report a change of Notice Address only through that specified procedure.

---

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021

★ DocMagic

(d) **Notices to Lender.** Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated in this Security Instrument unless Lender has designated another address (including an Electronic Address) by notice to Borrower. Any notice in connection with this Security Instrument will be deemed to have been given to Lender only when actually received by Lender at Lender's designated address (which may include an Electronic Address). If any notice to Lender required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(e) **Borrower's Physical Address.** In addition to the designated Notice Address, Borrower will provide Lender with the address where Borrower physically resides, if different from the Property Address, and notify Lender whenever this address changes.

**17. Governing Law; Severability; Rules of Construction.** This Security Instrument is governed by federal law and the law of the State of Oregon. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. If any provision of this Security Instrument or the Note conflicts with Applicable Law (i) such conflict will not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision, and (ii) such conflicting provision, to the extent possible, will be considered modified to comply with Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence should not be construed as a prohibition against agreement by contract. Any action required under this Security Instrument to be made in accordance with Applicable Law is to be made in accordance with the Applicable Law in effect at the time the action is undertaken.

As used in this Security Instrument: (a) words in the singular will mean and include the plural and vice versa; (b) the word "may" gives sole discretion without any obligation to take any action; (c) any reference to "Section" in this document refers to Sections contained in this Security Instrument unless otherwise noted; and (d) the headings and captions are inserted for convenience of reference and do not define, limit, or describe the scope or intent of this Security Instrument or any particular Section, paragraph, or provision.

**18. Borrower's Copy.** One Borrower will be given one copy of the Note and of this Security Instrument.

**19. Transfer of the Property or a Beneficial Interest in Borrower.** For purposes of this Section 19 only, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

**20. Borrower's Right to Reinstate the Loan after Acceleration.** If Borrower meets certain conditions, Borrower will have the right to reinstate the Loan and have enforcement of this Security Instrument discontinued at any time up to the later of (a) five days before any foreclosure sale of the Property, or (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate. This right to reinstate will not apply in the case of acceleration under Section 19.

To reinstate the Loan, Borrower must satisfy all of the following conditions: (aa) pay Lender all sums that then would be due under this Security Instrument and the Note as if no acceleration had occurred; (bb) cure any Default

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021

☆ DocMagic



Order:

**2024-2028 TDD 01-31-2024**

Requested By: g.shalini, Printed: 8/4/2025 10:55 AM

of any other covenants or agreements under this Security Instrument or the Note; (cc) pay all expenses incurred in enforcing this Security Instrument or the Note, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument or the Note; and (dd) take such action as Lender may reasonably require to assure that Lender's interest in the Property and/or rights under this Security Instrument or the Note, and Borrower's obligation to pay the sums secured by this Security Instrument or the Note, will continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (aaa) cash; (bbb) money order; (ccc) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (ddd) Electronic Fund Transfer. Upon Borrower's reinstatement of the Loan, this Security Instrument and obligations secured by this Security Instrument will remain fully effective as if no acceleration had occurred.

**21. Sale of Note.** The Note or a partial interest in the Note, together with this Security Instrument, may be sold or otherwise transferred one or more times. Upon such a sale or other transfer, all of Lender's rights and obligations under this Security Instrument will convey to Lender's successors and assigns.

**22. Loan Servicer.** Lender may take any action permitted under this Security Instrument through the Loan Servicer or another authorized representative, such as a sub-servicer. Borrower understands that the Loan Servicer or other authorized representative of Lender has the right and authority to take any such action.

The Loan Servicer may change one or more times during the term of the Note. The Loan Servicer may or may not be the holder of the Note. The Loan Servicer has the right and authority to: (a) collect Periodic Payments and any other amounts due under the Note and this Security Instrument; (b) perform any other mortgage loan servicing obligations; and (c) exercise any rights under the Note, this Security Instrument, and Applicable Law on behalf of Lender. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing.

**23. Notice of Grievance.** Until Borrower or Lender has notified the other party (in accordance with Section 16) of an alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action, neither Borrower nor Lender may commence, join, or be joined to any judicial action (either as an individual litigant or a member of a class) that (a) arises from the other party's actions pursuant to this Security Instrument or the Note, or (b) alleges that the other party has breached any provision of this Security Instrument or the Note. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 23. The notice of Default given to Borrower pursuant to Section 26(a) and the notice of acceleration given to Borrower pursuant to Section 19 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 23.

**24. Hazardous Substances.**

**(a) Definitions.** As used in this Section 24: (i) "Environmental Law" means any Applicable Laws where the Property is located that relate to health, safety, or environmental protection; (ii) "Hazardous Substances" include (A) those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and (B) the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, corrosive materials or agents, and radioactive materials; (iii) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (iv) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**(b) Restrictions on Use of Hazardous Substances.** Borrower will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower will not do, nor allow anyone else to do, anything affecting the Property that: (i) violates Environmental Law; (ii) creates an Environmental Condition; or (iii) due to the presence, use, or release of a

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021

☆ DocMagic



Hazardous Substance, creates a condition that adversely affects or could adversely affect the value of the Property. The preceding two sentences will not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

(c) **Notices; Remedial Actions.** Borrower will promptly give Lender written notice of: (i) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (ii) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (iii) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower will promptly take all necessary remedial actions in accordance with Environmental Law. Nothing in this Security Instrument will create any obligation on Lender for an Environmental Cleanup.

**25. Electronic Note Signed with Borrower's Electronic Signature.** If the Note evidencing the debt for this Loan is electronic, Borrower acknowledges and represents to Lender that Borrower: (a) expressly consented and intended to sign the electronic Note using an Electronic Signature adopted by Borrower ("Borrower's Electronic Signature") instead of signing a paper Note with Borrower's written pen and ink signature; (b) did not withdraw Borrower's express consent to sign the electronic Note using Borrower's Electronic Signature; (c) understood that by signing the electronic Note using Borrower's Electronic Signature, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms; and (d) signed the electronic Note with Borrower's Electronic Signature with the intent and understanding that by doing so, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**26. Acceleration; Remedies.**

(a) **Notice of Default.** Lender will give a notice of Default to Borrower prior to acceleration following Borrower's Default, except that such notice of Default will not be sent when Lender exercises its right under Section 19 unless Applicable Law provides otherwise. The notice will specify, in addition to any other information required by Applicable Law: (i) the Default; (ii) the action required to cure the Default; (iii) a date, not less than 30 days (or as otherwise specified by Applicable Law) from the date the notice is given to Borrower, by which the Default must be cured; (iv) that failure to cure the Default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property; (v) Borrower's right to reinstate after acceleration; and (vi) Borrower's right to bring a court action to deny the existence of a Default or to assert any other defense of Borrower to acceleration and sale.

(b) **Acceleration; Power of Sale; Expenses.** If the Default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender will be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 26, including, but not limited to: (i) reasonable attorneys' fees and/or trustees' fees and costs and other fees and costs associated with the enforcement of this Security Instrument, including but not limited to, foreclosure trustee's and sheriff's fees and costs, and title costs; (ii) property inspection and valuation fees; and (iii) other fees incurred unless prohibited by Applicable Law for the purpose of protecting Lender's interest in the Property and/or rights under this Security Instrument.

(c) **Notice of Sale; Sale of Property.** If Lender invokes the power of sale, Lender will execute or cause Trustee to execute a written notice of the occurrence of an event of Default and of Lender's election to cause the Property to be sold and will cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee will give notice of sale in the manner prescribed by Applicable Law to Borrower and to other required recipients. At a time permitted by, and in accordance with, Applicable Law, Trustee, without further demand on

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021

☆ DocMagic

Page 16 of 19

Borrower, will sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

(d) **Trustee's Deed; Proceeds of Sale.** Trustee will deliver to the purchaser a Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed will be prima facie evidence of the truth of the statements made in that deed. Trustee will apply the proceeds of the sale in the following order, or as otherwise required by Applicable Law: (i) to all expenses of the sale, including, but not limited to, reasonable Trustee's and reasonable attorneys' fees and costs; (ii) to all sums secured by this Security Instrument; and (iii) any excess to the person or persons legally entitled to it.

**27. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender will request Trustee to reconvey the Property and will surrender this Security Instrument and all Notes evidencing the debt secured by this Security Instrument to Trustee. Upon such request, Trustee will reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons will pay any recordation costs associated with such reconveyance. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**28. Substitute Trustee.** Lender may, from time to time, by itself or through the Loan Servicer, or any other duly appointed agent or nominee of Lender, remove Trustee and appoint a successor trustee to any Trustee appointed under this Security Instrument. Without conveyance of the Property, the successor trustee will succeed to all the title, power, and duties conferred upon Trustee in this Security Instrument and by Applicable Law.

**29. Attorneys' and Others' Fees.** Lender will be entitled to recover its reasonable attorneys' and/or foreclosure trustees' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument unless prohibited or restricted by Applicable Law. The term "attorneys' fees," whenever used in this Security Instrument, includes without limitation attorneys' fees incurred by Lender in any bankruptcy or appellate proceeding.

**30. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 to protect Lender's interest in the Property and rights under this Security Instrument.

**31. Required Evidence of Property Insurance.**

### WARNING

Unless Borrower provides Lender with evidence of the insurance coverage as required by this contract or loan agreement, Lender may purchase insurance at Borrower's expense to protect Lender's interest. This insurance may, but need not, also protect Borrower's interest. If the collateral becomes damaged, the coverage Lender purchases may not pay any claim Borrower makes or any claim made against Borrower. Borrower may later cancel this coverage by providing evidence that Borrower has obtained property coverage elsewhere.

Borrower is responsible for the cost of any insurance purchased by Lender. The cost of this insurance may be added to this contract or Borrower's loan balance. If the cost is added to this contract or Borrower's loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date Borrower's prior coverage lapsed or the date Borrower failed to provide proof of coverage.

The coverage Lender purchases may be considerably more expensive than insurance Borrower can obtain on their own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider signed by Borrower and recorded with it.

MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY

_____(Seal)
Libby F Markowitz                    -Borrower

_____          _____
Witness                            Witness

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)                    ☆DocMagic
Form 3038  07/2021

————————————————— [Space Below This Line For Acknowledgment] —————————————————

State of ~~OREGON~~ California

County of ~~Multnomah~~ Los Angeles

This record was acknowledged before me on ___01/30/2024___
                                                        (date)

by __Libby F Markowitz_____

_____

(name(s) of individual(s))

PAUL LEE
Notary Public - California
Los Angeles County
Commission # 2464034
My Comm. Expires Oct 20, 2027

(STAMP if required)

_____
(Signature of Notarial Officer)

Notary - Public - California
(Title, e.g., "Notary Public - State of Oregon")

My commission expires: __10/20/2027__

Loan Originator: Raymond Eshaghian, NMLSR ID ▮▮▮▮
Loan Originator Organization: Greenbox Loans, I▮▮▮▮

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3038  07/2021
                         Page 19 of 19                    ☆DocMagic

MIN: ██████████   Loan Number ██████████

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RIDER
## (MERS Rider)

THIS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RIDER ("MERS Rider") is made this **26th** day of **January, 2024** , and is incorporated into and amends and supplements the Deed of Trust or Mortgage Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to **GREENBOX LOANS INC, A CALIFORNIA CORPORATION**

("Lender")

of the same date and covering the Property described in the Security Instrument, which is located at:

**15985 North Applegate Road, Grants Pass, Oregon 97527**
[Property Address]

In addition to the representations, warranties, covenants, and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that the Security Instrument is amended as follows:

## A.   DEFINITIONS

1. The DEFINITIONS section of the Security Instrument is amended as follows:

**"Lender"** is   **GREENBOX LOANS INC**

Lender is a   **CALIFORNIA CORPORATION**           organized and existing under the laws of **CALIFORNIA**                                   . Lender's address is **3250 WILSHIRE BLVD. #1900, LOS ANGELES, CALIFORNIA 90010**

Lender is the beneficiary under this Security Instrument. The term "Lender" includes any successors and assigns of Lender.

**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is the Nominee for Lender and is acting solely for Lender. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MERS is appointed as the Nominee for Lender to exercise the rights, duties and obligations of Lender as Lender may from time to time direct, including but not limited to appointing a successor trustee, assigning, or releasing, in whole or in part this Security Instrument, foreclosing or directing Trustee to institute foreclosure of this Security Instrument, or taking such other actions as Lender may deem necessary or appropriate under this Security Instrument. The term "MERS" includes any successors and assigns of MERS. This appointment will inure to and bind MERS, its successors and assigns, as well as Lender, until MERS' Nominee interest is terminated.

2. The DEFINITIONS section of the Security Instrument is further amended to add the following definition:

**"Nominee"** means one designated to act for another as its representative for a limited purpose.

---

MERS RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3158   07/2021                    Page 1 of 4                    ☆DocMagic

Order: ██████████
**2024-2028 TDD 01-31-2024**                    Requested By: g.shalini, Printed: 8/4/2025 10:55 AM

**B. TRANSFER OF RIGHTS IN THE PROPERTY**

The TRANSFER OF RIGHTS IN THE PROPERTY section of the Security Instrument is amended to read as follows:

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  COUNTY | of | Josephine | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF
A.P.N.: 108-000-99

which currently has the address of  15985 North Applegate Road

[Street]

| Grants Pass | OREGON | 97527 | ("Property Address"): |
|---|---|---|---|
| [City] | [State] | [Zip Code] | |

TOGETHER WITH all the improvements now or subsequently erected on the property, including replacements and additions to the improvements on such property, all property rights, including, without limitation, all easements, appurtenances, royalties, mineral rights, oil or gas rights or profits, water rights, and fixtures now or subsequently a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property."

Lender, as the beneficiary under this Security Instrument, designates MERS as the Nominee for Lender. Any notice required by Applicable Law or this Security Instrument to be served on Lender must be served on MERS as the designated Nominee for Lender. Borrower understands and agrees that MERS, as the designated Nominee for Lender, has the right to exercise any or all interests granted by Borrower to Lender, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, assigning and releasing this Security Instrument, and substituting a successor trustee.

**C. NOTICES; BORROWER'S PHYSICAL ADDRESS**

Section 16 of the Security Instrument is amended to read as follows:

**16. Notices; Borrower's Physical Address.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.

MERS RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3158  07/2021          Page 2 of 4          ☆DocMagic

**(a) Notices to Borrower.** Unless Applicable Law requires a different method, any written notice to Borrower in connection with this Security Instrument will be deemed to have been given to Borrower when (i) mailed by first class mail, or (ii) actually delivered to Borrower's Notice Address (as defined in Section 16(c) below) if sent by means other than first class mail or Electronic Communication (as defined in Section 16(b) below). Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. If any notice to Borrower required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**(b) Electronic Notice to Borrower.** Unless another delivery method is required by Applicable Law, Lender may provide notice to Borrower by e-mail or other electronic communication ("Electronic Communication") if: (i) agreed to by Lender and Borrower in writing; (ii) Borrower has provided Lender with Borrower's e-mail or other electronic address ("Electronic Address"); (iii) Lender provides Borrower with the option to receive notices by first class mail or by other non-Electronic Communication instead of by Electronic Communication; and (iv) Lender otherwise complies with Applicable Law. Any notice to Borrower sent by Electronic Communication in connection with this Security Instrument will be deemed to have been given to Borrower when sent unless Lender becomes aware that such notice is not delivered. If Lender becomes aware that any notice sent by Electronic Communication is not delivered, Lender will resend such communication to Borrower by first class mail or by other non-Electronic Communication. Borrower may withdraw the agreement to receive Electronic Communications from Lender at any time by providing written notice to Lender of Borrower's withdrawal of such agreement.

**(c) Borrower's Notice Address.** The address to which Lender will send Borrower notice ("Notice Address") will be the Property Address unless Borrower has designated a different address by written notice to Lender. If Lender and Borrower have agreed that notice may be given by Electronic Communication, then Borrower may designate an Electronic Address as Notice Address. Borrower will promptly notify Lender of Borrower's change of Notice Address, including any changes to Borrower's Electronic Address if designated as Notice Address. If Lender specifies a procedure for reporting Borrower's change of Notice Address, then Borrower will report a change of Notice Address only through that specified procedure.

**(d) Notices to Lender.** Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated in this Security Instrument unless Lender has designated another address (including an Electronic Address) by notice to Borrower. Any notice in connection with this Security Instrument will be deemed to have been given to Lender only when actually received by Lender at Lender's designated address (which may include an Electronic Address). If any notice to Lender required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Borrower acknowledges that any notice Borrower provides to Lender must also be provided to MERS as Nominee for Lender until MERS' Nominee interest is terminated. Any notice provided by Borrower in connection with this Security Instrument will be deemed to have been given to MERS only when actually received by MERS.

**(e) Borrower's Physical Address.** In addition to the designated Notice Address, Borrower will provide Lender with the address where Borrower physically resides, if different from the Property Address, and notify Lender whenever this address changes.

## D.  SALE OF NOTE
Section 21 of the Security Instrument is amended to read as follows:

**21. Sale of Note.** The Note or a partial interest in the Note, together with this Security Instrument, may be sold or otherwise transferred one or more times. Upon such a sale or other transfer, all of Lender's

MERS RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3158  07/2021                         Page 3 of 4                    ☆ DocMagic

Order: █████████
**2024-2028 TDD 01-31-2024**                                    Requested By: g.shalini, Printed: 8/4/2025 10:55 AM

rights and obligations under this Security Instrument will convey to Lender's successors and assigns. Lender acknowledges that until it directs MERS to assign MERS's Nominee interest in this Security Instrument, MERS remains the Nominee for Lender, with the authority to exercise the rights of Lender.

## E. SUBSTITUTE TRUSTEE

Section 28 of the Security Instrument is amended to read as follows:

28. Substitute Trustee. In accordance with Applicable Law, Lender or MERS may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee will succeed to all the title, power, and duties conferred upon Trustee and by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this MERS Rider.

MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY

_____ (Seal)
Libby F Markowitz          -Borrower

MERS RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3158  07/2021          Page 4 of 4          ☆ DocMagic

MIN: ██████████████    Loan Number: ████████

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 26th day of January 2024 , and is incorporated into and amends and supplements the Mortgage, Mortgage Deed, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to GREENBOX LOANS INC

(the "Lender")

of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

15985 North Applegate Road, Grants Pass, Oregon 97527

[Property Address]

In addition to the representations, warranties, covenants, and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower must occupy and use the Property as Borrower's second home. Borrower will maintain exclusive control over the occupancy of the Property, including short-term rentals, and will not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property. Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

**8. Borrower's Loan Application.** Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890  07/2021                          Page 1 of 2          ☆DocMagic



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY

_____(Seal)
Libby F. Markowitz                  -Borrower

MULTISTATE SECOND HOME RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890  07/2021                    Page 2 of 2                    ☆ DocMagic

Order: ███

2024-2028 TDD 01-31-2024

Requested By: g.shalini, Printed: 8/4/2025 10:55 AM

# Exhibit 3

Jackson County Official Records **2025-002368**
**R-ATD**
Stn=7 HALLEV                    **02/05/2025 09:44:02 AM**
$10.00 $10.00 $13.00 $13.00 $11.00              **$121.00**
$60.00 $4.00
I, Christine Walker, County Clerk for Jackson County, Oregon, certify
that the instrument identified herein was recorded in the Clerk
records.
                Christine Walker - County Clerk

Prepared By and Return To:

Meridian Asset Services, LLC
140 Fountain Parkway N Suite 100
St. Petersburg, FL 33716
(239) 351-2442

_____ | _____ Space above for Recorder's use _____
Loan No: ▉▉▉▉

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS DESIGNATED NOMINEE FOR GREENBOX LOANS INC, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS**, whose address is **P.O. BOX 2026, FLINT, MI 48501-2026**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE ON BEHALF OF PRPM 2024-NQM2 TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all interest, all liens, and any rights due or to become due thereon under that certain deed of trust described below.

Date of Deed of Trust: **1/26/2024**
Original Loan Amount: **$2,137,500.00**
Executed by (Borrower(s)): **MLM OREGON LLC**
Original Trustee: **AMERITITLE, INC.**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS DESIGNATED NOMINEE FOR GREENBOX LOANS INC, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book **N/A**, Page **N/A**
Document/Instrument No: **2024-002028** in the Recording District of **Jackson, OR**, Recorded on **1/31/2024**.

Property more commonly described as: **15985 NORTH APPLEGATE ROAD, GRANTS PASS, OREGON 97527**

MIN# ▉▉▉▉▉▉▉        MERS PH: ▉▉▉▉▉▉

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ 12/10/24 _____

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS DESIGNATED NOMINEE FOR GREENBOX LOANS INC, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS**

By: _Raymond Eshaghian_                    Witness Name: _Alex Alevizos_
Title: _Vice President_

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        CALIFORNIA
County of       Los Angeles

On _12/10/2024_ before me, _Hyun Il Lee_, a Notary Public, personally appeared _Raymond Eshaghian_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **CALIFORNIA** that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____ (Seal)

HYUN IL LEE
COMM. #2477914
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires: December 30, 2027

# Exhibit 4

Shannon Doyle, Esq. (207291)
GHIDOTTI | BERGER, LLP
1920 Old Tustin Ave
Santa Ana, CA 92705
Tel: (949) 427-2010, Ex 1058
sdoyle@ghidottiberger.com

Attorneys for Movant
U.S. Bank Trust Company, National Association, not in its individual capacity, but solely as
trustee on behalf of PRPM 2024-NQM2 Trust, it successors and/or assignees

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In Re: | ) Case No.: 2:26-bk-12319-BB |
| | ) |
| MLM Oregon LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) **DECLARATION OF REAL ESTATE** |
| | ) **AGENT BROOKE GEANEY IN** |
| | ) **SUPPORT OF MOTION FOR RELIEF** |
| | ) **FROM STAY** |
| | ) |
| | ) DATE: |
| | ) TIME:. |
| | ) CTRM: |
| | ) |
| | ) Honorable Sheri Bluebond |
| | ) |

I, BROOKE GEANEY, declare as follows:

1. I have personal knowledge of the following matters and, if called upon as a witness, I could and would testify as to the matters set forth herein.

2. I am a real estate agent licensed with the Oregon Department of Real Estate.

3. My real estate license ID is 201219914.

4. I am a licensed real estate agent with the State of Oregon.

5. As a licensed real estate agent, I am qualified to perform price opinion's on real

1

DECLARATION OF BROOKE GEANEY IN SUPPORT OF MOTION FOR RELIEF FROM STAY

properties.

6.    I am familiar with the market values in and around Josephine County, Oregon, including the Josephine area.

7.   I was asked to perform an appraisal for the real property located at 15985 N Applegate, Grants Pass, OR 97527 (the "Property").

8.   I completed a Broker's Price Opinion of value (the "BPO") setting forth the Property's value as of March 15, 2026.  A true and correct copy of the BPO is attached hereto as **Exhibit "1".**

9.   In preparing the BPO, I collected, verified and interpreted various data necessary to render an opinion of value.  The data upon which I relied are of the type and quantity relied upon by other real estate agents when rendering an opinion of value of real property.

10. To render my opinion, I performed research from the road, google, prior listings that were cancelled in the multiple listing service and the other comparable properties in the area to the best of my knowledge.

11. .The comparable sales that I utilized in establishing the market value of the Property are detailed in the BPO.

12. Based on my observations of the Property, knowledge of the area, and valuation determination process as more particularly set forth in the Report, it is my professional opinion that the value of the Property at the time of the BPO was $2,750,000.00.

I declare under penalty of perjury of laws of the United States of America and the State of Oregon that the foregoing is true and correct and that this declaration was executed this

_____day of May 2026 at _____, Oregon.

06/01/2026, 08:42:15 PM PDT

*Brooke Geaney*
_____
BROOKE GEANEY

2

DECLARATION OF BROOKE GEANEY IN SUPPORT OF MOTION FOR RELIEF FROM STAY



# DRIVE-BY BPO
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Loan Number



$2,750,000
● As-Is Price

Please Note: This report was completed with the following assumptions: Market Approach: **Fair Market Price** , Marketing Time: **Typical** . Important additional information relating to this report, including use and restrictions, is contained in an attached addendum which is an integral part of this report.

| | | | |
|---|---|---|---|
| **Address** | 15985 N Applegate Rd, Grants Pass, OR 97527 | **Order ID** | **Property ID** 38508145 |
| **Inspection Date** | 03/15/2026 | **Date of Report** 03/17/2026 | |
| **Loan Number** | | **APN** 10800099 | |
| **Borrower Name** | MARKOWITZ, LIBBY | **County** Jackson | |

**Tracking IDs**

| | | | |
|---|---|---|---|
| **Order Tracking ID** | Thu Mar 12 26 5:00P - Fri Mar 13 26 9:00 A Batch | **Tracking ID 1** | |
| **Tracking ID 2** | -- | **Tracking ID 3** | -- |

## General Conditions

| | | |
|---|---|---|
| **Owner** | MLM OREGON LLC | **Condition Comments** |
| **R. E. Taxes** | $16,688 | I was unable to view the property I will assume that it is in average condition on the interior and exterior. |
| **Assessed Value** | $1,601,050 | |
| **Zoning Classification** | Residential EFU | |
| **Property Type** | SFR | |
| **Occupancy** | Occupied | |
| **Ownership Type** | Fee Simple | |
| **Property Condition** | Good | |
| **Estimated Exterior Repair Cost** | $0 | |
| **Estimated Interior Repair Cost** | $0 | |
| **Total Estimated Repair** | $0 | |
| **HOA** | No | |
| **Visible From Street** | Not Visible | |
| **Road Type** | Private | |

## Neighborhood & Market Data

| | | |
|---|---|---|
| **Location Type** | Rural | **Neighborhood Comments** |
| **Local Economy** | Stable | This is a rural area. Most of the homes in the area are on large lots. This home is an over improvement. |
| **Sales Prices in this Neighborhood** | Low: $283200 High: $1347000 | |
| **Market for this type of property** | Increased 17 % in the past 6 months. | |
| **Normal Marketing Days** | <90 | |

# DRIVE-BY BPO
by ClearCapital

**15985 N APPLEGATE RD**
GRANTS PASS, OR 97527

Loan Number

● As-Is Price
**$2,750,000**

## Current Listings

| | Subject | Listing 1 | Listing 2 * | Listing 3 |
|---|---|---|---|---|
| **Street Address** | 15985 N Applegate Rd | 7304 N Applegate Rd | 1489 Granite Hill Rd | 3396 Foots Creek Road |
| **City, State** | Grants Pass, OR | Grants Pass, OR | Grants Pass, OR | Gold Hill, OR |
| **Zip Code** | 97527 | 97527 | 97526 | 97525 |
| **Datasource** | Public Records | MLS | MLS | MLS |
| **Miles to Subj.** | -- | 7.83 [1] | 15.64 [1] | 7.00 [1] |
| **Property Type** | SFR | SFR | SFR | SFR |
| **Original List Price $** | $ | $2,775,000 | $1,995,808 | $2,199,999 |
| **List Price $** | -- | $2,500,000 | $1,995,808 | $2,199,999 |
| **Original List Date** | | 08/19/2024 | 07/25/2025 | 01/30/2026 |
| **DOM · Cumulative DOM** | -- · -- | 535 · 575 | 235 · 235 | 43 · 46 |
| **Age** (# of years) | 29 | 19 | 25 | 32 |
| **Condition** | Good | Good | Good | Average |
| **Sales Type** | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| **Location** | Beneficial ; Waterfront | Neutral ; Residential | Beneficial ; Waterfront | Beneficial ; Waterfront |
| **View** | Beneficial ; Water | Beneficial ; Water | Beneficial ; Water | Beneficial ; Water |
| **Style/Design** | 2 Stories Contemporary | 3 Stories Contemporary | 2 Stories Contemporary | 2 Stories Craftsman |
| **# Units** | 1 | 1 | 1 | 1 |
| **Living Sq. Feet** | 6,359 | 6,794 | 6,400 | 4,984 |
| **Bdrm · Bths · ½ Bths** | 5 · 4 · 1 | 5 · 5 · 1 | 4 · 4 | 6 · 5 |
| **Total Room #** | 14 | 15 | 12 | 15 |
| **Garage** (Style/Stalls) | Attached 4 Car(s) | Attached 4 Car(s) | Attached 3 Car(s) | Attached 3 Car(s) |
| **Basement** (Yes/No) | No | No | No | No |
| **Basement** (% Fin) | 0% | 0% | 0% | 0% |
| **Basement Sq. Ft.** | -- | -- | -- | -- |
| **Pool/Spa** | Spa - Yes | -- | Pool - Yes<br>Spa - Yes | Pool - Yes |
| **Lot Size** | 27.44 acres | 76.70 acres | 20.00 acres | 57.11 acres |
| **Other** | ADU 2533 | ADU 2400 | -- | ADU 960 |

\* Listing 2 is the most comparable listing to the subject.

[1] Comp's "Miles to Subject" was calculated by the system.

[2] Comp's "Miles to Subject" provided by Real Estate Professional.

[3] Subject $/ft based upon as-is sale price.

**Listing Comments** Why the comparable listing is superior or inferior to the subject.

**Listing 1** Superior age -1000. Superior GLA -60900. Superior room count -5000. Inferior spa +10000. Superior lot -147780. Inferior ADU +6650. Total -198030

**Listing 2** Superior age -500. Superior GLA -5740. Inferior room count +10000. Inferior garage +5000. Inferior lot +22320. Superior pool -30000. Inferior ADU +126650. Total +127730

**Listing 3** Inferior age +300. Inferior GLA +192500. Superior room count -5000. Inferior garage +5000. Superior pool -30000. Inferior condition +30000. Inferior spa +10000. Inferior ADU +78650. Superior lot -89010. Total +192440

# DRIVE-BY BPO
by ClearCapital

**15985 N APPLEGATE RD**
GRANTS PASS, OR 97527



Loan Number

$2,750,000
● As-Is Price

## Recent Sales

| | Subject | Sold 1 | Sold 2 * | Sold 3 |
|---|---|---|---|---|
| **Street Address** | 15985 N Applegate Rd | 560 Arnold Ln | 4425 Campbell Road | 12990 Modoc Road |
| **City, State** | Grants Pass, OR | Medford, OR | Phoenix, OR | White City, OR |
| **Zip Code** | 97527 | 97501 | 97535 | 97503 |
| **Datasource** | Public Records | MLS | MLS | MLS |
| **Miles to Subj.** | -- | 14.21 [1] | 20.42 [1] | 23.54 [1] |
| **Property Type** | SFR | SFR | SFR | SFR |
| **Original List Price $** | -- | $1,900,000 | $2,895,000 | $4,500,000 |
| **List Price $** | -- | $1,650,000 | $2,895,000 | $4,500,000 |
| **Sale Price $** | -- | $1,650,000 | $2,500,000 | $4,335,000 |
| **Type of Financing** | -- | Seller | Conventional | Cash |
| **Date of Sale** | -- | 01/07/2026 | 10/24/2025 | 12/19/2025 |
| **DOM · Cumulative DOM** | -- · -- | 299 · 299 | 26 · 116 | 186 · 217 |
| **Age** (# of years) | 29 | 28 | 20 | 24 |
| **Condition** | Good | Average | Good | Good |
| **Sales Type** | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| **Location** | Beneficial ; Waterfront | Neutral ; Waterfront | Neutral ; Waterfront | Neutral ; Waterfront |
| **View** | Beneficial ; Water | Neutral ; Water | Beneficial ; Water | Beneficial ; Water |
| **Style/Design** | 2 Stories Contemporary | 2 Stories Contemporary | 2 Stories Spanish | 3 Stories Other |
| **# Units** | 1 | 1 | 1 | 1 |
| **Living Sq. Feet** | 6,359 | 5,950 | 5,457 | 6,288 |
| **Bdrm · Bths · ½ Bths** | 5 · 4 · 1 | 5 · 5 | 4 · 4 · 1 | 6 · 6 · 1 |
| **Total Room #** | 14 | 14 | 13 | 17 |
| **Garage** (Style/Stalls) | Attached 4 Car(s) | Attached 4 Car(s) | Attached 3 Car(s) | Attached 5+ Car(s) |
| **Basement** (Yes/No) | No | No | No | No |
| **Basement** (% Fin) | 0% | 0% | 0% | 0% |
| **Basement Sq. Ft.** | | -- | -- | -- |
| **Pool/Spa** | Spa - Yes | Pool - Yes Spa - Yes | Pool - Yes Spa - Yes | Pool - Yes Spa - Yes |
| **Lot Size** | 27.44 acres | 56.73 acres | 25.05 acres | 40 acres |
| **Other** | ADU 2533 | -- | ADU 396 sq ft | ADU 1014 |
| **Net Adjustment** | -- | +$96,650 | +$219,400 | -$12,290 |
| **Adjusted Price** | -- | $1,746,650 | $2,719,400 | $4,322,710 |

\* Sold 2 is the most comparable sale to the subject.

[1] Comp's "Miles to Subject" was calculated by the system.

[2] Comp's "Miles to Subject" provided by Real Estate Professional.

[3] Subject $/ft based upon as-is sale price.

# DRIVE-BY BPO
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Loan Number

$2,750,000
● As-Is Price

## Recent Sales - Cont.

**Reasons for Adjustments** Why the comparable sale is superior or inferior to the subject.

**Sold 1**  Superior age -100. Inferior condition +25000. Inferior GLA +57260. Superior lot -87870. Superior pool -30000. Inferior ADU +126650

**Sold 2**  Superior age -900. Inferior GLA +126280. Inferior room +5000. Inferior car +5000. Inferior lot +7170. Superior pool -30000. Inferior ADU +106850.

**Sold 3**  Superior age -500. Inferior GLA +9940. Superior room count -15000. Superior garage -15000. Superior lot -37680. Superior pool -30000. Inferior ADU +75950



# DRIVE-BY BPO
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

| Loan Number |  $2,750,000 ● As-Is Price |

## Subject Sales & Listing History

| Current Listing Status | Not Currently Listed | Listing History Comments |
|---|---|---|
| Listing Agency/Firm | | There is no recent listing history for this property. |
| Listing Agent Name | | |
| Listing Agent Phone | | |
| # of Removed Listings in Previous 12 Months | 0 | |
| # of Sales in Previous 12 Months | 0 | |

| Original List Date | Original List Price | Final List Date | Final List Price | Result | Result Date | Result Price | Source |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## Marketing Strategy

| | As Is Price | Repaired Price |
|---|---|---|
| Suggested List Price | $2,900,000 | $2,900,000 |
| Sales Price | $2,750,000 | $2,750,000 |
| 30 Day Price | $2,700,000 | -- |

**Comments Regarding Pricing Strategy**

Sold comp 2 was most similar to the subject property in location, condition and overall appeal. Due to the subjects large GLA, lot, rural location, ADU, and view. I had to use a search 25 miles out, with a year back on the sold comps. There were not any comps available I chose the best comps that could be used.

## Clear Capital Quality Assurance Comments Addendum

**Reviewer's Notes** The broker's as-is conclusion reflects the market for the subject. Comps are within a reasonable distance, relatively current, and accurately reflect the subject's defining characteristics. Thus, the as-is conclusion appears to be adequately supported.

# DRIVE-BY BPO
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

 Loan Number

$2,750,000
● As-Is Price

## Subject Photos



Front



Address Verification



Side



Side



Street



Street

# DRIVE-BY BPO
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Loan Number

$2,750,000
● As-Is Price

## Listing Photos

**L1** 7304 N Applegate Rd
Grants Pass, OR 97527



Front

**L2** 1489 Granite Hill Rd
Grants Pass, OR 97526



Front

**L3** 3396 Foots Creek Road
Gold Hill, OR 97525



Front

# DRIVE-BY BPO
by ClearCapital



15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Loan Number

$2,750,000
● As-Is Price

## Sales Photos



560 Arnold Ln
Medford, OR 97501



Front

**S2** 4425 Campbell Road
Phoenix, OR 97535



Front

**S3** 12990 Modoc Road
White City, OR 97503



Front

# DRIVE-BY BPO
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Loan Number

$2,750,000
● As-Is Price

---

## ClearMaps Addendum

| Address | ★ 15985 N Applegate Rd, Grants Pass, OR 97527 | | | | |
|---|---|---|---|---|---|
| Loan Number | ▇▇▇▇ | Suggested List | $2,900,000 | Suggested Repaired | $2,900,000 | Sale | $2,750,000 |



| Comparable | | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|---|
| ★ | Subject | 15985 N Applegate Rd, Grants Pass, OR 97527 | -- | Parcel Match |
| L1 | Listing 1 | 7304 N Applegate Rd, Grants Pass, OR 97527 | 7.83 Miles [1] | Parcel Match |
| L2 | Listing 2 | 1489 Granite Hill Rd, Grants Pass, OR 97526 | 15.64 Miles [1] | Parcel Match |
| L3 | Listing 3 | 3396 Foots Creek Road, Gold Hill, OR 97525 | 7.00 Miles [1] | Parcel Match |
| S1 | Sold 1 | 560 Arnold Ln, Medford, OR 97501 | 14.21 Miles [1] | Parcel Match |
| S2 | Sold 2 | 4425 Campbell Road, Phoenix, OR 97535 | 20.42 Miles [1] | Street Centerline Match |
| S3 | Sold 3 | 12990 Modoc Road, White City, OR 97503 | 23.54 Miles [1] | Parcel Match |

[1] The Comparable "Distance from Subject" value has been calculated by the Clear Capital system.
[2] The Comparable "Distance from Subject" value has been provided by the Real Estate Professional.

# DRIVE-BY BPO
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Loan Number

$2,750,000
● As-Is Price




## Addendum: Report Purpose

### Market Approach and Market Time

The Market Approach of this report, as established by the customer, is: **Fair Market Price**. (See definition below.)
The Marketing Time as specified by the customer is **Typical**. (See definition below.)

| Definitions: | |
| --- | --- |
| Fair Market Price | A price at which the property would sell between a willing buyer and a willing seller neither being compelled by undue pressure and both having reasonable knowledge of relevant facts. |
| Distressed Price | A price at which the property would sell between a willing buyer and a seller acting under duress. |
| Marketing Time | The amount of time the property is exposed to a pool of prospective buyers before going into contract. The customer either specifies the number of days, requests a marketing time that is typical to the subject's market area and/or requests an abbreviated marketing time. |
| Typical for Local Market | The estimated time required to adequately expose the subject property to the market resulting in a contract of sale. |

**DRIVE-BY BPO**
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Loan Number

● As-Is Price
**$2,750,000**

---

## Addendum: Report Purpose - cont.

### Report Instructions

This section shows the instructions that were approved by the customer and provided to the broker prior to completing the report.
Instructions last updated: 05/20/2024
Purpose:
Please determine a fair market price for this property at which it would sell in a typical marketing time for the area.

Customer Specific Note:
Comp proximity is this client's primary focus. Other search parameters can be expanded in order to provide comps from the subject's immediate neighborhood. If distance must be expanded, please provide a detailed explanation.
If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for directions on how to proceed with the report. Please do preliminary research on the subject before going out to the property.

This customer has requested that online and MLS research be completed in order to accurately report the subjects listing history.

Comparable Requirements:
1. Please use comparables from the same neighborhood, block or subdivision whenever possible.
2. Use normal/non-distressed/unforced sales and listing comparables whenever possible. If distressed activity is the prevailing market force in the neighborhood, please ensure detailed comments are provided.
3. Do not use damaged or abandoned properties, foreclosures, REOs, or properties clearly inferior compared to the general neighborhood standard.
4. Whenever possible, use comps that have sold during a similar seasonal market as compared to the effective date of the report.
5. Whenever possible, use comps that have closed in the past 3 months to show the current market conditions. In rapidly changing markets, active listing comps should be given equal or greater weight than sold comps in your analysis.
6. In assessing the AS-IS price for the subject, please take it to mean:

- Normal/ non-distressed/ un-forced sale
- Properly and professionally marketed
- Taking place during the current seasonal market
- Allowing non-distressed marketing timelines typical for the neighborhood.

7. In assessing Quick Sale price for the subject, please take it to mean:

- Normal/ non-distressed/ unforced sales, allowing 30 days to secure a buyer
- Properly and professionally marketed.

Standard Instructions:
1. Clear Capital Code Of Conduct - Please make sure that you are always abiding by the Clear Capital Code of Conduct when completing valuation reports.
2. If the subject is currently listed, please consider all available information pertaining to the subject's condition. This information should be utilized when developing the assumption of the subject's condition.
3. Use the subject characteristics provided in the report Grid (if preloaded) to evaluate the property. This information is from a full interior appraisal and is assumed to be most accurate. If your inspection reveals obvious inaccuracies, please explain in the narrative of the report.
4. Include sufficient, factual detail to help our mutual customer gain a complete understanding of the subject's neighborhood such as substantiated distance to amenities, parks, schools, commercial or industrial influences, REO activity, traffic, etc.
5. Do not approach occupants or owners.
6. If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for direction on how to proceed with the report. Please do preliminary research on the subject before going out to the property.
7. Please do not accept if you or your office has completed a report on this property in the last 3 months, are currently listing this property, or have any vested interest in the subject property.
8. Clear Capital does not allow any log ins from IP addresses from foreign countries. This includes, but is not limited to; data entry services, form completion services, etc. Also, it is against Clear Capital code of conduct to share your password with anyone who is not a W2 employee in your office.
9. Clear Capital and our mutual customers greatly appreciate your expertise. If you cannot personally inspect the property, select comparables, and determine a price for the subject, please do not accept this report. Per the standards and guidelines adopted by Clear Capital and other industry leaders, the use of assistants to complete any of the

# DRIVE-BY BPO
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Loan Number

$2,750,000
● As-Is Price

## Report Instructions - cont.

aforementioned tasks is not permitted.

10. No part of your analysis or reporting may be based on the race, color, religion, sex, actual or perceived sexual orientation, actual or perceived gender identity, age, actual or perceived marital status, disability, familial status, national origin of either the prospective owners or occupants of the subject property, present owners or occupants of the property, or present owners or occupants of the properties in the vicinity of the subject property, or on any other basis prohibited by federal, state or local law.

11. When commenting on the subject property or comp selections, refrain from the use of unsupported or subjective terms to assess or rate, such as, but not limited to, "high," "low," "good," "bad," "fair," "poor," "strong," "weak," "rapid," "slow," "fast" or "average" without providing a foundation for analysis and contextual information. It is inappropriate to add language that could indicate unconscious bias, including but not limited to: "pride of ownership," "crime-ridden area," "desirable neighborhood or location" or "undesirable neighborhood or location

Undue Influence Concerns

Please contact uiprovider@clearcapital.com for any Undue Influence concerns.

Independence Hotline

Please notify Clear Capital of any independence concerns by calling (530) 550-2138

Terms of Use, Code of Conduct and Professional Discretion:

Due to the importance of an independent opinion of price, please do not discuss your price with anyone or be influenced by list price, pending offers, accept comp packets, repair estimates or the listing agent's opinion.

If you accept and perform this assignment, you do so in accordance with the Clear Capital Vendor Agreement Terms of Use and Code of Conduct to which you agreed.

All interactions with consumers (borrowers, homeowners, POCs, etc.) must be performed in a professional manner. Should you observe any concerning or suspicious activity while you engage with a consumer whether onsite or otherwise, please contact Clear Capital immediately. Please refrain from discussing anything related to the observation with the consumer directly. This includes suspected elder abuse, elder financial abuse, vulnerable adults, fraud, forgery or any violations of local, state or federal laws.

Photo Instructions:

1. Photos should be clear of car window glare, door frames, and mirrors.
2. One current, original photo of the front of the subject, framed and focused, parallel to the horizon.
3. One address verification photo
4. One street scene photo looking down the street
5. Damages (upload enough photos to support your repair cost estimates.)
6. MLS photos of all (3) sold comparables, if available
7. MLS photos of all (3) listing comparables, if available



# DRIVE-BY BPO
by ClearCapital

15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Loan Number



$2,750,000
● As-Is Price

## Broker Information

| | | | |
|---|---|---|---|
| **Broker Name** | Brooke Geaney | **Company/Brokerage** | Lincoln Homes Inc. |
| **License No** | 201219914 | **Address** | 3347 Cloverlawn Dr Grants Pass OR 97527 |
| **License Expiration** | 02/28/2027 | **License State** | OR |
| **Phone** | ▬▬▬▬▬ | **Email** | brooke.geaney90@gmail.com |
| **Broker Distance to Subject** | 9.75 miles | **Date Signed** | 03/17/2026 |

*By confirming the above contact and real estate license information and submitting the report, the above signed hereby certifies and agrees that: 1) I personally took the pictures, selected comparables, and determined the price conclusion. 2) To the best of my knowledge, the statements of fact contained in this report are true and correct. 3) The reported analyses, opinions, and conclusions are my personal, impartial, and unbiased professional analyses, opinions, and conclusions. 4) I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved. 5) I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment. 6) My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined price point. 7) I did not base, either partially or completely, my analysis and/or opinion and conclusions in this report on race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law. 8) I maintain errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of this Report.*

## Disclaimer

**Unless the licensee who prepared this report is also licensed by the Appraiser Certification and Licensure Board, the report is not intended to meet the requirements set out in the Uniform Standards of Appraisal Practice. The report is a competitive market analysis or letter opinion and is not intended as an appraisal. If an appraisal is desired, the services of a competent professional licensed appraiser should be obtained.**

**Unless otherwise specifically agreed to in writing:**
**The intended purpose of this report is to assist the Clear Capital account holder in making decisions within the scope of applicable statutory and regulatory requirements and performing required due diligence. This document is provided solely for the use of the Clear Capital account holder and not any other party, is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. In the event that this document is found to be defective, incorrect, negligently prepared or unfit for its authorized use, Clear Capital's sole liability shall be to promptly refund the total fee expended by the account holder for this report or to replace it at no charge to the account holder, but in no event shall Clear Capital be responsible to the account holder for any indirect or consequential damages whatsoever. This warranty is in lieu of all other warranties, express or implied, except where otherwise required by law. The account holder shall notify Clear Capital within thirty (30) days of this report's delivery to the account holder if it believes that this document is defective, incorrect, negligently prepared or unfit for its authorized use. Under no circumstances may Clear Capital forms or their contents be published, copied, replicated, or mimicked.**



**Invoice Number:** ▉▉▉▉

**Invoice Date:** 03/17/2026
**Due Date:** 04/16/2026

**Billed To:**
Fay Servicing (Non-ECOA)
Accounts Payable
440 South LaSalle, Suite 2000
Chicago, IL 60605
Phone: 312.257.3209

**Payable To:**
ClearCapital.com, LLC
Tax ID: 68-0474135
P.O. Box 885176
Los Angeles, CA 90088-5176
Email: accounting@clearcapital.com
Phone: 530.550.2500

**Wire/ACH Information:**
Bank Name: Columbia Bank
Address: 500 Auburn Folsom Road
Auburn, CA 95603
Routing/ABA Number: ▉▉▉▉
Account Name: ClearCapital.com, LLC
Account Number: ▉▉▉▉

| | Tracking 1 | Loan Number | Customer Provided Unique Id | Trustor | Property | Price | Total |
|---|---|---|---|---|---|---|---|
| Order: Thu Mar 12 26 5:00P - Fri Mar 13 26 9:00A Batch, Ordered on 03/13/2026 by Rachael Mweene (Order ID: ▉▉▉▉ Prop at $92) | | | | | | | |
| 1) | ▉▉▉▉ ▉▉▉▉ | | | MARKOWITZ, LIBBY | 15985 N APPLEGATE RD GRANTS PASS OR 97527 | $92.00 | |
| | Drive-by BPO | | | | | | |
| | | | | | **Order Subtotal:** | | + $92.00 |
| | | | | | **State Sales Tax:** | | $0.00 |
| | | | | | **Invoice Total:** | | **$92.00** |

# Exhibit 5

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Thomas B. Ure<br>8280 Florence Avenue, Suite 200<br>Downey, CA 90240<br>tom@urelawfirm.com<br>213-202-6070 Fax: 213-202-6075<br>170492 CA<br>tom@urelawfirm.com<br><br>☐ Individual appearing without attorney<br>☑ Attorney for Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>MLM OREGON, LLC<br><br>Debtor(s). | CASE NO.: 2:26-bk-12319-BB<br><br>CHAPTER: 11<br><br><br>SUMMARY OF AMENDED SCHEDULES,<br>MASTER MAILING LIST,<br>AND/OR STATEMENTS<br>[LBR 1007-1(c)] |
|---|---|

A filing fee is required to amend Schedules D, or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is also required as an attachment if creditors are being added to the Schedule D or E/F.
Are one or more creditors being added? ☐ Yes ☑ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☑ Schedule A/B     ☐ Schedule C     ☐ Schedule D     ☐ Schedule E/F     ☐ Schedule G
☐ Schedule H     ☐ Schedule I     ☐ Schedule J     ☐ Schedule J-2     ☐ Statement of Financial Affairs
☐ Statement About Your Social Security Number(s)     ☐ Statement of intentions     ☐ Master Mailing List
☐ Other (specify)

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and or statements are true and correct.

Date:  April 16, 2026

_____
Marvin Markowitz
Debtor 1 Signature

_____
Debtor 2 (Joint Debtor) Signature (if applicable)

NOTE:    It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California

December 2015                                    Page 1                                    F 1007-1.1.AMENDED.SUMMARY

**Fill in this information to identify the case:**

Debtor name      **MLM OREGON, LLC**

United States Bankruptcy Court for the:      CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)      **2:26-bk-12319-BB**

■ Check if this is an
amended filing

# Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property      12/15

**Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest.
Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties
which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts
or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write
the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an
additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.**

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset
schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the
debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:      Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1.  **Wells Fargo Bank** | **Business Checking** | **6675** | **$1,009.59** |

4.     **Other cash equivalents** *(Identify all)*

5.     **Total of Part 1.**      **$1,009.59**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

**Part 2:      Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

**Part 3:      Accounts receivable**

10. **Does the debtor have any accounts receivable?**

■ No.  Go to Part 4.
☐ Yes Fill in the information below.

**Part 4:      Investments**

13. **Does the debtor own any investments?**

■ No.  Go to Part 5.

| Debtor | **MLM OREGON, LLC** | Case number *(If known)* | **2:26-bk-12319-BB** |
|---|---|---|---|
| | Name | | |

☐ Yes Fill in the information below.

| Part 5: | **Inventory, excluding agriculture assets** |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

| Part 7: | **Office furniture, fixtures, and equipment; and collectibles** |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

| Part 8: | **Machinery, equipment, and vehicles** |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

| Part 9: | **Real property** |
|---|---|

**54. Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.
■ Yes Fill in the information below.

55.    **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property | Nature and extent of debtor's interest in property | Net book value of debtor's interest | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | | (Where available) | | |
| 55.1. **15985 N Applegate Rd Grants Pass, OR 97527** | Fee simple | $0.00 | N/A | $5,000,000.00 |

56.    **Total of Part 9.**                                                                                                              **$5,000,000.00**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
Copy the total to line 88.

57.    **Is a depreciation schedule available for any of the property listed in Part 9?**

■ No
☐ Yes

| Debtor | **MLM OREGON, LLC** | Case number *(If known)* | **2:26-bk-12319-BB** |
| --- | --- | --- | --- |
| | Name | | |

58.    **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

■ No

☐ Yes

**Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.

☐ Yes Fill in the information below.

Part 11:    **All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
 Include all interests in executory contracts and unexpired leases not previously reported on this form.

■ No.  Go to Part 12.

☐ Yes Fill in the information below.

Debtor  **MLM OREGON, LLC**
<br>_____  Case number (If known) **2:26-bk-12319-BB**
Name

---

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** _Copy line 5, Part 1_ | $1,009.59 | |
| 81. **Deposits and prepayments.** _Copy line 9, Part 2._ | $0.00 | |
| 82. **Accounts receivable.** _Copy line 12, Part 3._ | $0.00 | |
| 83. **Investments.** _Copy line 17, Part 4._ | $0.00 | |
| 84. **Inventory.** _Copy line 23, Part 5._ | $0.00 | |
| 85. **Farming and fishing-related assets.** _Copy line 33, Part 6._ | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** _Copy line 43, Part 7._ | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** _Copy line 51, Part 8._ | $0.00 | |
| 88. **Real property.** _Copy line 56, Part 9_.............................................> | | $5,000,000.00 |
| 89. **Intangibles and intellectual property.** _Copy line 66, Part 10._ | $0.00 | |
| 90. **All other assets.** _Copy line 78, Part 11._ | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $1,009.59 | + 91b. $5,000,000.00 |
| 92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92 | | $5,001,009.59 |

---

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**8280 Florence Avenue, Suite 200**
**Downey, CA 90240**

A true and correct copy of the foregoing document entitled (*specify*):   **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Nicholas S Couchot on behalf of Creditor Golden State Bank**
**ncouchot@swlaw.com**

**Shannon A Doyle on behalf of Interested Party Courtesy NEF**
**sdoyle@ghidottiberger.com, bknotifications@ghidottiberger.com**

**Kelly L Morrison on behalf of U.S. Trustee United States Trustee (LA)**
**kelly.l.morrison@usdoj.gov**

**Joshua K Partington on behalf of Creditor Golden State Bank**
**jpartington@swlaw.com, mlinker@swlaw.com**

**United States Trustee (LA)ustpregion16.la.ecf@usdoj.gov**

**Thomas B Ure on behalf of Debtor MLM OREGON, LLC**
**tom@urelawfirm.com, urelawfirm@jubileebk.net;tom@ecf.courtdrive.com**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| _____ | **Stacy Marin** | **/s/ Stacy Marin** |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California

**Fill in this information to identify the case:**

Debtor name    **MLM OREGON, LLC**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)    _____

☐ Check if this is an
amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

**Be as complete and accurate as possible.**

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1  Fay Servicing**<br>Creditor's Name<br>**1601 LBJ Freeway Suite 150**<br>**Farmers Branch, TX 75234**<br>Creditor's mailing address<br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br>**10/15/2018**<br>**Last 4 digits of account number**<br>**5700** | **Describe debtor's property that is subject to a lien**<br>**15985 N Applegate Rd**<br>**Grants Pass, OR 97527**<br><br>**Describe the lien**<br>**First Mortgage**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | **$2,387,826.38** | **$5,000,000.00** |
| **Do multiple creditors have an interest in the same property?**<br>☐ No<br>■ Yes. Specify each creditor, including this creditor and its relative priority.<br>**1. Fay Servicing**<br>**2. Golden State Bank** | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| **2.2  Golden State Bank**<br>Creditor's Name<br>**P.O. Box 430**<br>**Upland, CA 91785**<br>Creditor's mailing address<br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br>**1/30/2024**<br>**Last 4 digits of account number**<br>**3781** | **Describe debtor's property that is subject to a lien**<br>**15985 N Applegate Rd**<br>**Grants Pass, OR 97527**<br><br>**Describe the lien**<br>**2nd Deed of Trust**<br>**Is the creditor an insider or related party?**<br>■ No<br>☐ Yes<br>**Is anyone else liable on this claim?**<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | **$330,785.22** | **$5,000,000.00** |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:**<br>Check all that apply | | |

| Debtor | **MLM OREGON, LLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

☐ No

■ Yes. Specify each creditor, including this creditor and its relative priority.

**Specified on line 2.1**

☐ Contingent
☐ Unliquidated
☐ Disputed

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.

$2,718,611.60

### Part 2: List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **Prestige Default Services, LLC**<br>**1920 Old Tustin Ave.**<br>**Santa Ana, CA 92705** | Line **2.1** | **5845** |

Official Form 206D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 2

# Exhibit 6

PAYOFF STATEMENT


Fay Servicing, LLC
1601 LBJ Freeway, Ste 150
Farmers Branch, TX 75234
800-495-7166


June 09, 2026


TO:
Libby F Markowitz
493 S Robertson Blvd
Beverly Hills, CA 90211

Loan No:       5700

Loan Type: CONV W/O PMI

Property Address:
15985 N Applegate Rd
Grants Pass OR 97527


        *   ONLY CERTIFIED FUNDS WILL BE ACCEPTED FOR THE   *
        *   PAYOFF SHOWN BELOW ON THE CAPTIONED MORTGAGE.   *

These figures are good through June 20, 2026
This loan is due for the April 01, 2025 payment
The current total unpaid Principal Balance is          $    2,137,500.00
The current total Principal Deferment Amount                      .00000000
Interest at  9.50000%                                   264,815.78
Escrow/Impound Overdraft                                 24,557.21
Unpaid Late Charges                                       5,076.54
Recoverable Corporate Advances                           14,661.00
Rehab Holdback                                                 .00
Exit/Draw Fee                                                 .00
Cema Assignment Fee                                           .00
Addl Interest Due                                            .00
Default Interest                                             .00
Payoff Interest Due                                          .00
Interest On Esc Adv                                          .00
Recording Fee                                            101.00
 * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $    2,446,711.53
Funds received on or after June 20, 2026 will require an additional
$ 556.34 interest per Day.




Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due.  A late charge of $        .00 will be
assessed  15 days after a current payment is due and should be added
to the payoff total if received after that time.

Please remit payoff checks to the address below:

Attention: Payoff Processing
1601 LBJ Freeway, Ste 150
Farmers Branch, TX 75234

Failure to send checks to the above address may result in the accrual of
additional interest. Issuance of this statement does not suspend the
contract requirement to make the mortgage payments when due.

Wiring Instructions:

Below are wiring instruction for payoffs to be sent to Fay Servicing, LLC

Bank Name: Fifth Third Bank
ABA Number: ███████████
Account Number: ███████████████

Please note: Wires are processed in accordance with Federal Business Days
which are Monday through Friday and exclude Federal Holidays. Wires received
by 3:00 pm CST on these business days will be processed same day. Wires
received after 3:00 P.M.CST are subject to process on the following day
business day. Please be sure to include the borrower's loan number, full
name, and property address to avoid delays. Fay Servicing reserves the
right to reject any wire received that we are unable to identify.

Payoff Statement Disclaimer:

If funds received are insufficient to pay off the account, for any reason
including, but limited to, error in calculation, NSF, or additonal
escrow disbursement and/or adjustments (including fees & costs),
Fay Servicing reserves the right to decline to pay the account in full.
In addition, any and all accrued interest will be due at the time of
payoff.

Notice to borrowers with adjustable rate mortgages: The amount of calculated
interest which is displayed on the payoff statement represents the interest
rate in effect on the account at the time the statement was generated.
Please note that the rate of interest displayed is that which was in effect
as of the loan's due date. Payoff funds will be applied based on the most
recent interest rate in effect at the time the payoff statement was
generated.

Important Bankruptcy Notice:
If you have been discharged from personal liability on the mortgage because
of bankruptcy proceedings and have not reaffirmed the mortgage, or if you
are the subject of a pending bankruptcy proceeding, this letter is not an
attempt to collect a debt from you but merely provides informational
notice regarding the status of the account. If you are represented by an
attorney with respect to your mortgage, please forward this document
to your attorney. If the property is sold, please provide the sellers
forwarding address.

*If your mailing address differs from the subject property address,
please contact your Account Manager to update your mailing address*

Residential mortgage loan servicers are regulated by the Oregon Division
of Financial Regulation. To file a complaint, call 888-877-4894 or visit
http://dfr.oregon.gov.

Fay Servicing, LLC is a debt collector, and information you provide to us
will be used for that purpose.

Our office hours are Monday - Thursday 8 a.m. - 7 p.m., Friday
8 a.m. - 5 p.m., and Saturday 9 a.m. - 12 p.m. CST. NC Residents:
Fay Servicing, LLC NC Permit Number 112302, 1601 LBJ Highway Suite 150,
Farmers Branch, TX 75234.

# Exhibit 7

Jackson County Official Records **2025-020925**
R-ND
Stn=4 SIMPSOHP  **09/29/2025 01:55:02 PM**
$25.00 $10.00 $13.00 $13.00 $11.00  **$136.00**
$60.00 $4.00
I, Christine Walker, County Clerk for Jackson County, Oregon, certify that the instrument identified herein was recorded in the Clerk records.
Christine Walker - County Clerk

**NOTICE OF DEFAULT AND ELECTION TO SELL**

**Original Beneficiary Name:**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS

**Trustor Name:**
MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY

**Original Trustee Name:**
AMERITITLE, INC

**Original trust deed recorded:**
1/31/2024, as Document No.: 2024-002028

**TS NO.: 25-15845**

**After recording return to:**
**Ghidotti Berger, LLP**
C/O Prestige Default Services, LLC
1920 Old Tustin Ave.
Santa Ana, California 92705
Phone: 949-427-2010

# NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain trust deed made by MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY as grantor, to GHIDOTTI BERGER, LLP as successor trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS, as beneficiary, dated 1/26/2024, recorded 1/31/2024, in the Records of Jackson County, Oregon, as Instrument No. 2024-002028 , covering the following described real property situated in the above-mentioned county and state, to wit: **SEE ATTACHED "EXHIBIT A"**

The street address or other common designation, if any for the real property described above is purported to be:
**15985 NORTH APPLEGATE ROAD, GRANTS PASS, Oregon 97527**

The Tax Assessor's Account ID for the Real Property is purported to be: **384W08-00-00707 / 10800099**

The undersigned hereby certifies that no assignments of the trust deed by the trustee, Ghidotti Berger, LLP, or by the beneficiary and no appointments of a successor trustee have been made, except as recorded in the mortgage records of the county or counties in which the above-described real property is situated. Further, no action has been instituted to recover the debt, or any part thereof, now remaining secured by the Deed of Trust, or, if such action has been instituted, such action has been dismissed except as permitted by Oregon Revised Statues ("ORS") 86.752(7).

There is a default by grantor or other person owing an obligation, performance of which is secured by the trust deed, or by the successor in interest, with respect to provisions therein which authorize sale in the event of such provision. The default for which foreclosure is made is grantor's failure to pay when due the following sums:

TS No: 25-15845        Loan No: 5700

**Delinquent Payments**

| FROM | THRU | NO. PMT | RATE | AMOUNT | TOTAL |
|------|------|---------|------|--------|-------|
| 4/1/2025 | | 6 | | $19,855.75 | $119,134.50 |

**Beneficiary Advances**
Accrued Late Charges                                                  $4,230.45
Recoverable Corporate Advance Balance                                $787.50


TOTAL FORECLOSURE COST:                            $7,192.49

**TOTAL REQUIRED TO REINSTATE:**                   **$131,344.94**

By reason of the default, the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, those sums being the following, to-wit:

(i)the installment of principal and interest and escrow amounts, if applicable, which became due on 4/1/2025 , and all subsequent installments of principal and interest and escrow; (ii) late charges; (iii) default interest;  advances made by the Beneficiary, plus interest thereon from the date made; (v) attorneys' fees and other expenses and costs of collection; and (vi) trustees and foreclosure fees, costs, and expenses.

Notice is hereby given that the Beneficiary and Trustee, by reason of said default, have elected and do hereby elect to foreclose the Deed of Trust by advertisement and sale pursuant to ORS 86.705 to 86.815, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the Grantor had, or had the power to convey, at the time Grantor executed the Deed of Trust, together with any interest the Grantor or Grantor's successors in interest acquired after the execution of the Deed of Trust, to satisfy the obligations secured by the Deed of Trust and the expenses of the sale, including the compensations of the Trustee as provided by law, and reasonable fees of Trustee's attorneys

The Sale will be held at the hour of **11:00 AM**, in accord with the standard of time established by ORS 187.110 and pursuant to ORS 86.771(7) on **2/9/2026**, at the following place: **At the front entrance of the Jackson County Courthouse, 10 S Oakdale, Medford, OR**, County of Jackson, State of Oregon, which is the hour, date and place last set for sale.

Other than as shown of record, neither the beneficiary nor the trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to grantor or of any lessee or other person in possession of or occupying the property, except:

| Name and Last Known Address | Nature of Right, Lien or Interest |
|---|---|
| **MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY**<br>712 N Beverly Dr.<br>Beverly Hills, CA 90210 | |

Notice is further given that any person named in ORS 86.778 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Deed of Trust reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or Deed of Trust, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Deed of Trust,

2

TS No: 25-15845          Loan No: 5700

together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.778. Requests from persons named in ORS 86.778 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the Beneficiary or if required by the terms of the loan documents.

The mailing address of the trustee is:
Physical Address:
Ghidotti Berger, LLP
1920 Old Tustin Avenue
Santa Ana, CA 92705

For further information, please contact:
GHIDOTTI BERGER, LLP
c/o Prestige Default Services, LLC
1920 Old Tustin Ave.
Santa Ana, California 92705
Phone: 949-427-2010
Fax: 949-446-1318

**Without limiting the trustee's disclaimer of representation or warranties, Oregon law requires the trustee to state in this notice that some residential property sold at a trustee's sale may have been used in manufacturing methamphetamines, the chemical components of which are known to be toxic. Prospective purchasers of residential property should be aware of this potential danger before deciding to place a bid for this property at the trustee's sale.**

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to this grantor as well as any other person owing an obligation, the performance of which is secured by the trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any. The Trustee has authorized the undersigned attorney to sign this instrument on behalf of the Trustee. Nothing in this Notice of Default and Election to Sell (this "Notice of Default") should be construed as a waiver of any fees or other amounts owing to Beneficiary pursuant to the terms of the loan documents.

3

TS No: 25-15845          Loan No: 5700

Dated: *9/24/2025*

**Ghidotti Berger, LLP**

By:_____
**Daniel Ross OSB #112979**

State of *KING*
County of *WA*

I certify that I know or have satisfactory evidence that **Daniel Ross OSB #112979** (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: *9/24/2025*

*K. Krishna Sudha*
(Seal or stamp) Signature

*NOTARY PUBLIC*
Title

My appointment expires: *03/23/2028*

KRISHNA SUDHA KARUMURI
Notary Public
State of Washington
Commission # 24016114
My Comm. Expires Mar 23, 2028

4

**EXHIBIT "A"**

**REF NO.: 25-15845**

BEGINNING AT A 5/8 INCH IRON PIN AT THE NORTHWEST CORNER OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 38 SOUTH, RANGE 4 WEST OF THE WILLAMETTE MERIDIAN IN JACKSON COUNTY, OREGON, AS DENOTED ON SURVEY NO. 20928 ON FILE IN THE OFFICE OF THE JACKSON COUNTY SURVEYOR; THENCE SOUTH 00°27'47" WEST, ALONG THE WEST LINE OF SOUTHWEST QUARTER OF SAID DESCRIBED SECTION 8, A DISTANCE OF 350.91 FEET TO THE CENTER OF THE ROGUE RIVER, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER BEARS NORTH 00°27'47" EAST, 63.00 FEET; THENCE ALONG THE CENTERLINE OF THE ROGUE RIVER THE FOLLOWING SURVEY COURSES: SOUTH 44°29'20" EAST, 483.08 FEET; THENCE SOUTH 24°58'00" EAST, 164.50 FEET; THENCE SOUTH 11°54'36" EAST, 221.50 FEET; THENCE SOUTH 31°53'35" EAST, 468.00 FEET, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER REFERENCE MONUMENT BEARS SOUTH 89°29'50" EAST, 183.00 FEET; THENCE SOUTH 89°29'50" EAST, BEING PARALLEL WITH AND 120.00 FEET SOUTH OF THE SOUTH LINE OF SAID SECTION 8, A DISTANCE OF 306.83 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 20°42'13" EAST, 654.26 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 80°26'45" EAST, 152.96 FEET; THENCE NORTH 81°35'30" EAST, 16.94 FEET TO THE WESTERLY LINE OF NORTH APPLEGATE ROAD; THENCE ALONG SAID WESTERLY LINE OF NORTH APPLEGATE ROAD THE FOLLOWING SURVEY COURSES: 115.42 FEET ALONG THE ARC OF A 505.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 13°05'44" (CHORD BEARING NORTH 12°54'28" WEST, 115.17 FEET) TO A POINT OF TANGENCY; THENCE NORTH 06°21'36" WEST, 122.39 FEET TO A POINT OF CURVATURE; THENCE 174.14 FEET ALONG THE ARC OF A 170.00 FOOT RADIUS CURVE TO THE LEFT, HAVING A DELTA ANGLE OF 58°41'29" (CHORD BEARING NORTH 35°42'21" WEST, 166.62 FEET) TO A POINT OF TANGENCY; THENCE NORTH 65°03'05" WEST, 322.13 FEET TO A POINT OF CURVATURE; THENCE 289.46 FEET ALONG THE ARC OF A 470.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 35°17'14" (CHORD BEARING NORTH 47°24'28" WEST, 284.91 FEET) TO A POINT OF TANGENCY; THENCE NORTH 29°45'51" WEST, 138.78 FEET TO A 5/8 INCH IRON PIN ON THE NORTH LINE OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 8; THENCE NORTH 89°44'18" WEST, 696.59 FEET TO THE POINT OF BEGINNING.

# Exhibit 8

| Jackson County Official Records | **2026-000644** |
| R-AF | |
| Stn=7 HALLEV | **01/12/2026 10:29:02 AM** |
| $90.00 $20.00 $10.00 $13.00 $13.00 | **$241.00** |
| $11.00 $60.00 $4.00 $20.00 | |

I, Christine Walker, County Clerk for Jackson County, Oregon, certify that the instrument identified herein was recorded in the Clerk records.
            Christine Walker - County Clerk

## AFFIDAVIT OF SERVICE

State of Oregon
County of Jackson SS County

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC(MERS) AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS
VS
MLM OREGON LLC AN OREGON LIMITED LIABILITY COMPANY

I, VICCI EWEN , hereby certify and swear that at all times herein mentioned I was now and am a competent person 18 year of age or older and meet the requirements in the state of service, am not the beneficiary of the trustee named in the Trustee's Notice of Sale, Exhibit A, Debt Validation Notice, I am not the beneficiary of, director, employee of or attorney for the beneficiary or trustee, or successor of either, corporate or otherwise.

I further certify that the service was made of the foregoing service documents, Trustee's Notice of Sale, Exhibit A, Debt Validation Notice, I am not the beneficiary,

Upon Occupants at: 15985 North Applegate Road, Grants Pass, OR 97527
with copy(ies) as follows:

1st attempt: OCTOBER 09, 2025, AT 11:35am, POSTED ON GATE IN A SECURE MANNER

2nd attempt: OCTOBER 13, 2025, AT 2:55PM, POSTED ON GATE IN A SECURE MANNER

3rd attempt: OCTOBER 22, 2025, AT 6:17PM, POSTED ON GATE IN A SECURE MANNER

 Proof of Mailing: I do hereby certify that on OCTOBER 23, 2025, pursuant to ORS 86.750, I did cause to be
MAILED a copy of the Trustee's Notice of Sale, Exhibit A, Debt Validation Notice, I am not the beneficiary, at the above address, in a first class, postage prepaid, sealed envelope to

Occupants at: 15985 NORTH APPLEGATE RD, GRANTS PASS, OR 97527

Subscribed and sworn before me on the 23RD day of OCTOBER 2025, by the affiant who is personally known or identified to me.

_____
                        Process Server
_____
            Notary Public for Oregon
            My Commission Expires: ___1-21-26___



OFFICIAL STAMP
KRISTEEN MARTIN
NOTARY PUBLIC-OREGON
COMMISSION NO. 1020751
MY COMMISSION EXPIRES JANUARY 21, 2026

25-15845

## VALLEY PRIDE PUBLICATIONS, INC.

Publishers Of The:



**Teresa L. Pearson, Publisher**

8991 Rogue River Highway • P.O. Box 1485 • Rogue River, OR 97537

Phone: (541) 582-1707 • Fax: (541) 582-0201 • rrpress@rogueriverpress.com

November 5, 2025

# AFFIDAVIT OF PUBLICATION

State Of Oregon

ss.

County of Jackson

I, Teresa L. Pearson, being first duly sworn, depose and say that I am publisher of the *Rogue River Press*, a newspaper of general circulation published at 8991 Rogue River Highway, Rogue River, OR, in the aforesaid county and state; that I know from my personal knowledge that a **Trustee's Notice of Sale Legal Notice: PPP #25-007079**, a printed copy of which is hereto annexed, was published in the entire issue of said newspaper for **four (4)** time(s) for **Prestige Posting and Publishing**, in the issue(s) of: **October 15, 22, & 29 and November 5, 2025.**

Subscribed and sworn to me by _____

Teresa L. Pearson, Publisher, Rogue River Press

On this ____5th____ day of ____November____, 2025

OFFICIAL STAMP
TERESA J MENDONCA
NOTARY PUBLIC - OREGON
COMMISSION NO. 1023336
MY COMMISSION EXPIRES MARCH 31, 2026

_____
Notary Public of Oregon

My commission expires ___31st___ day of ___March___, 20 26

*1996, 1998, 1999, 2000, 2001, & 2005 Winner of Elmo Smith Award For General Excellence*

www.rogueriverpress.com               ROGUE RIVER PRESS               October 15, 2025   13

**TRUSTEE'S NOTICE OF SALE** Loan No: 0000375700 T.S. No.: 25-15845 Reference is made to that certain deed made by, MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY as Grantor to AMERITITLE, INC, as trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS, as Beneficiary, dated 1/26/2024, recorded 1/31/2024, in official records of Jackson County, Oregon as Instrument No. 2024-002028 (indicated which), covering the following described real property situated in said County and State, to-wil: APN: 384W08-00-00707 / 10800099 BEGINNING AT A 5/8 INCH IRON PIN AT THE NORTHWEST CORNER OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 38 SOUTH, RANGE 4 WEST OF THE WILLAMETTE MERIDIAN IN JACKSON COUNTY, OREGON, AS DENOTED ON SURVEY NO 20928 ON FILE IN THE OFFICE OF THE JACKSON COUNTY SURVEYOR; THENCE SOUTH 00°27'47"WEST, ALONG THE WEST LINE OF SOUTHWEST QUARTER OF SAID DESCRIBED SECTION 8, A DISTANCE OF 350.91 FEET TO THE CENTER OF THE ROGUE RIVER, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER BEARS NORTH 00°27'47" EAST, 63.00 FEET; THENCE ALONG THE CENTERLINE OF THE ROGUE RIVER THE FOLLOWING SURVEY COURSES: SOUTH 44°29'20" EAST, 483.08 FEET; THENCE SOUTH 24°58'00" EAST, 164.50 FEET; THENCE SOUTH 11°54'36" EAST, 221.50 FEET; THENCE SOUTH 31°53'35" EAST, 468.00 FEET, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER REFERENCE MONUMENT BEARS SOUTH 89°29'50" EAST, 183.00 FEET; THENCE SOUTH 89°29'50" EAST, BEING PARALLEL WITH AND 120.00 FEET SOUTH OF THE SOUTH LINE OF SAID SECTION 8, A DISTANCE OF 306.83 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 20°42'13" EAST, 654.26 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 80°26'45" EAST, 152.96 FEET; THENCE NORTH 81°35'30" EAST, 16.94 FEET TO THE WESTERLY LINE OF NORTH APPLEGATE ROAD; THENCE ALONG SAID WESTERLY LINE OF NORTH APPLEGATE ROAD THE FOLLOWING SURVEY COURSES: 115.42 FEET ALONG THE ARC OF A 505.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 13°05'44" (CHORD BEARING NORTH 12°54'28" WEST, 115.17 FEET) TO A POINT OF TANGENCY; THENCE NORTH 06°21'36" WEST, 122.39 FEET TO A POINT OF CURVATURE; THENCE 174.14 FEET ALONG THE ARC OF A 170.00 FOOT RADIUS CURVE TO THE LEFT, HAVING A DELTA ANGLE OF 58°41'29" (CHORD BEARING NORTH 35°42'21" WEST, 166.62 FEET) TO A POINT OF TANGENCY; THENCE NORTH 65°03'05" WEST, 322.13 FEET TO A POINT OF CURVATURE; THENCE 289.46 FEET ALONG THE ARC OF A 470.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 35°17'14" (CHORD BEARING NORTH 47°24'28" WEST, 284.91 FEET) TO A POINT OF TANGENCY; THENCE NORTH 29°45'51" WEST, 138.78 FEET TO A 5/8 INCH IRON PIN ON THE NORTH LINE OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 8; THENCE NORTH 89°44'18" WEST, 696.59 FEET TO THE POINT OF BEGINNING. Property Commonly known as: 15985 NORTH APPLEGATE ROAD, GRANTS PASS, Oregon 97527. Both the beneficiary and the trustee have elected to sell the said real property to satisfy the obligations secured by said trust deed and notice has been recorded pursuant to Section 86.735(3) of Oregon Revised Statutes: the default for which the foreclosure is made is the grantor's: (i)the installment of principal and interest and escrow amounts, if applicable, which became due on 4/1/2025 , and all subsequent installments of principal and interesl and escrow; (ii) late charges; (iii) default interest; advances made by the Beneficiary, plus interest thereon from the dale made; (v) attorneys' fees and other expenses and costs of collection; and (vi) trustees and foreclosure fees, costs, and expenses. By this reason of said default the beneficiary has declared all obligations secured by said deed of trust immediately due and payable, said sums being the following, to-wit: The sum of $2,137,500.00 together with interest thereon at the rate of 9.5 % per annum from 3/1/2025 until paid; plus all accrued late charges thereon; and all trustee's fees, foreclosure costs and any sums advanced by the beneficiary pursuant to the terms of said deed of trust. Whereof, notice hereby is given that Ghidotti Berger, LLP, the undersigned trustee will on 2/9/2026 at the hour of 11:00 AM, Standard of Time, as established by section 187.110, Oregon Revised Stalues, at At the front entrance of the Jackson County Courthouse, 10 S Oakdale, Medford, OR County of Jackson, State of Oregon, sell at public auction to the highest bidder for cash the interest in the said described real property which the grantor had or had power to convey at the time of the execution by him of the said trust deed, together with any interest which the grantor or his successors in interesl acquired after the execution of said trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that any person named in Section 86.753 of Oregon Revised Statutes has the right to have the foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of said principal as would not then be due had no default occurred), together with the costs, trustee's and attorney's fees and curing any other default complained of in the Notice of Default by tendering the performance required under the obligation or trust deed, at any time prior to five days before the date last set for sale Loan No: 0000375700 T.S. No: 25-15845 TRUSTEE'S NOTICE OF SALE In construing this notice, the masculine gender includes the feminine and the neuter, the singular includes plural, the word "grantor" includes any successor in interest to the grantor as well as any other persons owing an obligation, the performance of which is secured by said trust deed, the words "trustee" and 'beneficiary" include their respective successors in interest, if any. The Trustee has authorized the undersigned attorney to sign this instrument on behalf of the Trustee. Without limiting the trustee's disclaimer of representation or warranties, Oregon law requires the trustee to state in this notice that some residential property sold at a trustee's sale may have been used in manufacturing methamphetamines, the chemical componenls of which are known to be toxic. Prospective purchasers of residential property should be aware of this potential danger before deciding to place a bid for this property at the trustee's sale. For Sale Information Call: (949) 776-4697 website: https://prestigepostandpub.com For further information, please contact: Ghidotti Berger, LLP, 1920 Old Tustin Ave., Santa Ana, California 92705; Phone: 949-427-2010. Dated: 09/24/2025 Signature By: Daniel Ross OSB #112979 PPP #25-007079 Publish: 10/15/2025, 10/22/2025, 10/29/2025, 11/5/2025

**Do you buy the *Rogue River Press* off the newsstand each week?** • **Did you know you may save $$ by subscribing?** 541.582.1707

**TRUSTEE'S NOTICE OF SALE** T.S. No.: OR-25-1008546-RM Reference is made to that certain deed made by, RICHARD CHEZIK, SINGLE MAN as Grantor to TICOR TITLE COMPANY OF OREGON, as trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE RESEARCH CENTER, LLC DBA VETERANS UNITED HOME LOANS, BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS, as Beneficiary, dated 5/31/2023, recorded 6/1/2023, in official records of JACKSON County, Oregon in book/reel/volume No. and/or as fee/file/instrument/microfilm/reception number 2023-010481 and subsequently assigned or transferred by operation of law to NewRez LLC d/b/a Shellpoint Mortgage Servicing covering the following described real property situated in said County, and State. APN: 10580952 364W15-CD-01107 LOT 6 OF BROOKSIDE VILLAGE, PHASE I, IN JACKSON COUNTY, OREGON, ACCORDING TO THE OFFICIAL PLAT THEREOF, RECORDED IN VOLUME 13, PAGE 5 OF PLAT RECORDS Commonly known as: 734 BROOKSIDE CIR, ROGUE RIVER, OR 97537 The undersigned hereby certifies that based upon business records there are no known written assignments of the trust deed by the trustee or by the beneficiary, except as recorded in the records of the county or counties in which the above described real property is situated. Further, no action has been instituted to recover the debt, or any part thereof, now remaining secured by the trust deed, or, if such action has been instituted, such action has been dismissed except as permitted by ORS 86.752(7). Both the beneficiary and the trustee have elected to sell the said real property to satisfy the obligations secured by said trust deed and notice has been recorded pursuant to Section 86.752(3) of Oregon Revised Statutes There is a default by granlor or other person owing an obligation, performance of which is secured by the trust deed, or by the successor in interest, wilh respecl to provisions therein which authorize sale in the event of such provision. The default for which foreclosure is made is grantor's failure to pay when due the following sum: TOTAL REQUIRED TO REINSTATE: $31,180.24 TOTAL REQUIRED TO PAYOFF: $304,715.62 Because of interest, late charges, and other charges that may vary from day-to-day, the amount due on the day you pay may be greater. It will be necessary for you to contact the Trustee before the time you tender reinstatement or the payoff amount so that you may be advised of the exact amount you will be required to pay By reason of the default, the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, those sums being the following, to- wit: The installments of principal and interest which became due on 9/1/2024, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents. Whereof, notice hereby is given that QUALITY LOAN SERVICE CORPORATION, the undersigned trustee will on 1/22/2026 at the hour of 11:00 AM, Standard of Time, as established by section 187.110, Oregon Revised Statues, At the front entrance of the County Courthouse, 10 South Oakdale, Medford, OR 97501 County of JACKSON, State of Oregon, sell at public auction to the highest bidder for cash the interest in the said described real property which the grantor had or had power to convey at the lime of the execution by him of the said trust deed, together wilh any interest which the grantor or his successors in interest acquired after the execution of said trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that any person named in Section 86.778 of Oregon Revised Statutes has the right to have the foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of said principal as would not then be due had no default occurred), together with the costs, trustee's and attorney's fees and curing any other default complained of in the Notice of Default by tendering the performance required under the obligation or trust deed, at any time prior to five days before the date last set for sale. Other than as shown of record, neither the beneficiary nor the trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to grantor or of any lessee or other person in possession of or occupying the property, except: Name and Last Known Address and Nature of Right, Lien or Interest RICHARD CHEZIK 1441 MORROW RD APT 803 MEDFORD, OR 97504-4689 Original Borrower For Sale Information Call: 866-539-4173 or Login to: www.Servicelinkauction.com In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interesl to this grantor as well as any other person owing an obligation, the performance of which is secured by the trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any. Pursuant to Oregon Law, this sale will not be deemed final until the Trustee's deed has been issued by QUALITY LOAN SERVICE CORPORATION. If any irregularities are discovered wilhin 10 days of the date of this sale, the trustee will rescind the sale, return the buyer's money and take further action as necessary. If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee. This shall be the Purchaser's sole and exclusive remedy. The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney. If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations. Wilhout limiting the trustee's disclaimer of representations or warranties, Oregon law requires the trustee to state in this notice that some residential property sold at a trustee's sale may have been used in manufacturing methamphetamines, the chemical components of which are known to be toxic. Prospective purchasers of residential property should be aware of this potential danger before deciding to place a bid for this property al the trustee's sale. NOTICE TO TENANTS: TENANTS OF THE SUBJECT REAL PROPERTY HAVE CERTAIN PROTECTIONS AFFORDED TO THEM UNDER ORS 86.782 AND POSSIBLY UNDER FEDERAL LAW. ATTACHED TO THIS NOTICE OF SALE, AND INCORPORATED HEREIN, IS A NOTICE TO TENANTS THAT SETS FORTH SOME OF THE PROTECTIONS THAT ARE AVAILABLE TO A TENANT OF THE SUBJECT REAL PROPERTY AND WHICH SETS FORTH CERTAIN REQUIREMENTS THAT MUST BE COMPLIED WITH BY ANY TENANT IN ORDER TO OBTAIN THE AFFORDED PROTECTION, AS REQUIRED UNDER ORS 86.771. TS No: OR-25-1008546-RM Dated: 9/4/2025 Quality Loan Service Corporation, as Trustee Signature By: Jeff Stenman, President Trustee's Mailing Address: QUALITY LOAN SERVICE CORPORATION 108 1 st Ave South, Suite 450, Seattle, WA 98104 Toll Free: (866) 925-0241 Trustee's Physical Address: Quality Loan Service Corporation 2763 Camino Del Rio South San Diego, CA 92108 Toll Free: (866) 925-0241 ID-SPub #0250274 10/8/2025 10/15/2025 10/22/2025 10/29/2025

# TRUSTEE'S NOTICE OF SALE

Loan No: 5700        T.S. No.: 25-15845

Reference is made to that certain deed made by, MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY as Grantor to AMERITITLE, INC, as trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS, as Beneficiary, dated 1/26/2024, recorded 1/31/2024, in official records of Jackson County, Oregon as Instrument No. 2024-002028 (indicated which), covering the following described real property situated in said County and State, to-wit:

**APN: 384W08-00-00707 / 10800099**
SEE ATTACHED "EXHIBIT A"

Property Commonly known as:
15985 NORTH APPLEGATE ROAD
GRANTS PASS, Oregon 97527

Both the beneficiary and the trustee have elected to sell the said real property to satisfy the obligations secured by said trust deed and notice has been recorded pursuant to Section 86.735(3) of Oregon Revised Statutes: the default for which the foreclosure is made is the grantor's:
(i)the installment of principal and interest and escrow amounts, if applicable, which became due on 4/1/2025 , and all subsequent installments of principal and interest and escrow; (ii) late charges; (iii) default interest;  advances made by the Beneficiary, plus interest thereon from the date made; (v) attorneys' fees and other expenses and costs of collection; and (vi) trustees and foreclosure fees, costs, and expenses.

By this reason of said default the beneficiary has declared all obligations secured by said deed of trust immediately due and payable, said sums being the following, to-wit: The sum of $2,137,500.00 together with interest thereon at the rate of  9.5 % per annum from  3/1/2025 until paid; plus all accrued late charges thereon; and all trustee's fees, foreclosure costs and any sums advanced by the beneficiary pursuant to the terms of said deed of trust.

Whereof, notice hereby is given that Ghidotti Berger, LLP, the undersigned trustee will on **2/9/2026** at the hour of **11:00 AM**, Standard of Time, as established by section 187.110, Oregon Revised Statues, at **At the front entrance of the Jackson County Courthouse, 10 S Oakdale, Medford, OR** County of Jackson, State of Oregon, sell at public auction to the highest bidder for cash the interest in the said described real property which the grantor had or had power to convey at the time of the execution by him of the said trust deed, together with any interest which the grantor or his successors in interest acquired after the execution of said trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee.  Notice is further given that any person named in Section 86.753 of Oregon Revised Statutes has the right to have the foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of said principal as would not then be due had no default occurred), together with the costs, trustee's and attorney's fees and curing any other default complained of in the Notice of Default by tendering the performance required under the obligation or trust deed, at any time prior to five days before the date last set for sale.

1

Loan No: 5700      T.S. No: 25-15845

## TRUSTEE'S NOTICE OF SALE

In construing this notice, the masculine gender includes the feminine and the neuter, the singular includes plural, the word "grantor" includes any successor in interest to the grantor as well as any other persons owing an obligation, the performance of which is secured by said trust deed, the words "trustee" and 'beneficiary" include their respective successors in interest, if any. The Trustee has authorized the undersigned attorney to sign this instrument on behalf of the Trustee.

**Without limiting the trustee's disclaimer of representation or warranties, Oregon law requires the trustee to state in this notice that some residential property sold at a trustee's sale may have been used in manufacturing methamphetamines, the chemical components of which are known to be toxic. Prospective purchasers of residential property should be aware of this potential danger before deciding to place a bid for this property at the trustee's sale.**

For Sale Information Call: (949) 776-4697 website: https://prestigepostandpub.com

For further information, please contact:
Ghidotti Berger, LLP
1920 Old Tustin Ave.
Santa Ana, California 92705
Phone: 949-427-2010

Dated: 9/24/2025

Ghidotti Berger, LLP

Signature By: Daniel Ross OSB #112979

State of KING
County of WA

I certify that I know or have satisfactory evidence that **Daniel Ross OSB #112979** (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 09|24|2025

K. Krishna Sudha
(Seal or stamp) Signature

NOTARY PUBLIC
Title

My appointment expires: 03|23|2028

KRISHNA SUDHA KARUMURI
Notary Public
State of Washington
Commission # 24016114
My Comm. Expires Mar 23, 2028

2

**EXHIBIT "A"**

**REF NO.: 25-15845**

BEGINNING AT A 5/8 INCH IRON PIN AT THE NORTHWEST CORNER OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 38 SOUTH, RANGE 4 WEST OF THE WILLAMETTE MERIDIAN IN JACKSON COUNTY, OREGON, AS DENOTED ON SURVEY NO. 20928 ON FILE IN THE OFFICE OF THE JACKSON COUNTY SURVEYOR; THENCE SOUTH 00°27'47" WEST, ALONG THE WEST LINE OF SOUTHWEST QUARTER OF SAID DESCRIBED SECTION 8, A DISTANCE OF 350.91 FEET TO THE CENTER OF THE ROGUE RIVER, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER BEARS NORTH 00°27'47" EAST, 63.00 FEET; THENCE ALONG THE CENTERLINE OF THE ROGUE RIVER THE FOLLOWING SURVEY COURSES: SOUTH 44°29'20" EAST, 483.08 FEET; THENCE SOUTH 24°58'00" EAST, 164.50 FEET; THENCE SOUTH 11°54'36" EAST, 221.50 FEET; THENCE SOUTH 31°53'35" EAST, 468.00 FEET, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER REFERENCE MONUMENT BEARS SOUTH 89°29'50" EAST, 183.00 FEET; THENCE SOUTH 89°29'50" EAST, BEING PARALLEL WITH AND 120.00 FEET SOUTH OF THE SOUTH LINE OF SAID SECTION 8, A DISTANCE OF 306.83 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 20°42'13" EAST, 654.26 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 80°26'45" EAST, 152.96 FEET; THENCE NORTH 81°35'30" EAST, 16.94 FEET TO THE WESTERLY LINE OF NORTH APPLEGATE ROAD; THENCE ALONG SAID WESTERLY LINE OF NORTH APPLEGATE ROAD THE FOLLOWING SURVEY COURSES: 115.42 FEET ALONG THE ARC OF A 505.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 13°05'44" (CHORD BEARING NORTH 12°54'28" WEST, 115.17 FEET) TO A POINT OF TANGENCY; THENCE NORTH 06°21'36" WEST, 122.39 FEET TO A POINT OF CURVATURE; THENCE 174.14 FEET ALONG THE ARC OF A 170.00 FOOT RADIUS CURVE TO THE LEFT, HAVING A DELTA ANGLE OF 58°41'29" (CHORD BEARING NORTH 35°42'21" WEST, 166.62 FEET) TO A POINT OF TANGENCY; THENCE NORTH 65°03'05" WEST, 322.13 FEET TO A POINT OF CURVATURE; THENCE 289.46 FEET ALONG THE ARC OF A 470.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 35°17'14" (CHORD BEARING NORTH 47°24'28" WEST, 284.91 FEET) TO A POINT OF TANGENCY; THENCE NORTH 29°45'51" WEST, 138.78 FEET TO A 5/8 INCH IRON PIN ON THE NORTH LINE OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 8; THENCE NORTH 89°44'18" WEST, 696.59 FEET TO THE POINT OF BEGINNING.

**Ghidotti Berger, LLP**
**1920 Old Tustin Ave.**
**Santa Ana, California 92705**
**949-427-2010**

Date: 9/10/2025

T.S. Number: 25-15845
Loan Number: █████████

## DEBT VALIDATION NOTICE

1.   The enclosed document relates to a debt owed to:
     **U.S. Bank Trust Company, National Association, not in its individual capacity, but solely as trustee on behalf of PRPM 2024-NQM2 Trust**

2.   You may send us a written request for the name and address of the original creditor, if different from the current creditor, and we will obtain and mail the information within thirty (30) days after we receive your written request.

3.   As of **9/10/2025** the estimated total delinquency owed was **$2,149,710.44**, because of interest, late charges, and other charges that may vary from day to day this amount will increase until the delinquency has been fully paid.  Before forwarding payment, please contact the above at the address or phone number listed in order to receive the current amount owed.

4.   As of **9/10/2025**, the estimated amount required to pay the entire debt in full was the unpaid principal balance of **$2,137,500.00**, plus interest from **3/1/2025**, late charges, negative escrow and attorney and/or trustee's fees and costs that may have been incurred.  The amount will increase daily until the debt has been paid in full.  For further information please write to the above listed address or call **949-427-2010**

5.   You may dispute the validity of this debt, or any portion thereof, by contacting our office within thirty (30) days after receiving this notice.  In that event, we will obtain and mail to you written verification of the debt. Otherwise, we will assume that the debt is valid.

---

**WE ARE NOT A DEBT COLLECTOR. THIS NOTICE IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY. IF WE ARE DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE AND THIS NOTICE IS PROVIDED TO SATISFY ANY DEBT VALIDATION NOTICE REQUIREMENTS.**

---

"The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.  They may not harass you by using threats of violence or arrest or by using obscene language.  Collectors may not use false or misleading statements of call you at work if they know or have reason to know that you may not receive personal calls at work.  For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.  Collectors may contact another person to confirm your location or enforce a judgment.  For more information about debt collection activities, you may contact the Federal Trade Commission at 1/877/FTC-HELP or ."

3

# DECLARATION OF MAILING

Reference No:    25-15845
Mailing Number: 0056621-01
Type of Mailing: ORNTS

STATE OF CALIFORNIA          }
                             } SS
COUNTY OF SAN DIEGO          }

I, _____ **Charlene Broussard** _____, declare as follows:

I am, and at all times herein mentioned, a citizen of the United States, over the age of eighteen years and a resident of San Diego County, California. I am not a party to the action/matter identified in the document(s) referenced below. My business address is iMailTracking, LLC, 9620 Ridgehaven Ct., Ste. A, San Diego, CA 92123.

At the request of Prestige Default Services on 10/1/2025, I deposited in the United States mail a copy of the attached document(s), in separate sealed envelopes, in accordance with the checked mailing classes defined below, postage prepaid, to the address list on exhibit A, attached hereto and made a part hereof.

☒ First Class
☐ Certified
☐ First Class with Certificate of Mailing
☐ Certified with Return Receipt
☐ Certified with Return Receipt and Restricted Delivery
☒ Certified with Electronic Return Receipt
☐ Registered
☐ Registered International

Additional Services provided during the production of this mail order (if any):
None

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

October 2 2025   San Diego, California
Date and Location                                                    Declarant

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

On _____October 2 2025_____ before me, _____Adelina R. Larson_____,
personally appeared Charlene Broussard, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on this instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____                    (Seal)

ADELINA R. LARSON
Notary Public · California
San Diego County
Commission # 2510160
My Comm. Expires Feb 15. 2029

Prestige000402-0056621-01-000-20251001-Aalpha.doc                         Rev. 12/02/2020

| Jackson County Official Records **2025-020925** |
| R-ND |
| Stn=4 SIMPSOHP         09/29/2025 01:55:02 PM |
| $25.00 $10.00 $13.00 $13.00 $11.00         **$136.00** |
| $60.00 $4.00 |
| I, Christine Walker, County Clerk for Jackson County, Oregon, certify that the instrument identified herein was recorded in the Clerk records. |
| Christine Walker - County Clerk |

**NOTICE OF DEFAULT AND ELECTION TO SELL**

**Original Beneficiary Name:**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS

**Trustor Name:**
MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY

**Original Trustee Name:**
AMERITITLE, INC

**Original trust deed recorded:**
1/31/2024, as Document No.: 2024-002028

**TS NO.: 25-15845**

**After recording return to:**
**Ghidotti Berger, LLP**
C/O Prestige Default Services, LLC
1920 Old Tustin Ave.
Santa Ana, California 92705
Phone: 949-427-2010

## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain trust deed made by MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY as grantor, to GHIDOTTI BERGER, LLP as successor trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS, as beneficiary, dated 1/26/2024, recorded 1/31/2024, in the Records of Jackson County, Oregon, as Instrument No. 2024-002028 , covering the following described real property situated in the above-mentioned county and state, to wit: **SEE ATTACHED "EXHIBIT A"**

The street address or other common designation, if any for the real property described above is purported to be:
**15985 NORTH APPLEGATE ROAD, GRANTS PASS, Oregon 97527**

The Tax Assessor's Account ID for the Real Property is purported to be: **384W08-00-00707 / 10800099**

The undersigned hereby certifies that no assignments of the trust deed by the trustee, Ghidotti Berger, LLP, or by the beneficiary and no appointments of a successor trustee have been made, except as recorded in the mortgage records of the county or counties in which the above-described real property is situated. Further, no action has been instituted to recover the debt, or any part thereof, now remaining secured by the Deed of Trust, or, if such action has been instituted, such action has been dismissed except as permitted by Oregon Revised Statues ("ORS") 86.752(7).

There is a default by grantor or other person owing an obligation, performance of which is secured by the trust deed, or by the successor in interest, with respect to provisions therein which authorize sale in the event of such provision. The default for which foreclosure is made is grantor's failure to pay when due the following sums:

TS No: 25-15845          Loan No: 5700

**Delinquent Payments**

| FROM | THRU | NO. PMT | RATE | AMOUNT | TOTAL |
|------|------|---------|------|--------|-------|
| 4/1/2025 | | 6 | | $19,855.75 | $119,134.50 |

**Beneficiary Advances**
Accrued Late Charges                                                              $4,230.45
Recoverable Corporate Advance Balance                                            $787.50

TOTAL FORECLOSURE COST:          $7,192.49

**TOTAL REQUIRED TO REINSTATE:**          **$131,344.94**

By reason of the default, the beneficiary has declared all sums owing on the obligation secured by the trust deed immediately due and payable, those sums being the following, to-wit:

(i)the installment of principal and interest and escrow amounts, if applicable, which became due on 4/1/2025 , and all subsequent installments of principal and interest and escrow; (ii) late charges; (iii) default interest; advances made by the Beneficiary, plus interest thereon from the date made; (v) attorneys' fees and other expenses and costs of collection; and (vi) trustees and foreclosure fees, costs, and expenses.

Notice is hereby given that the Beneficiary and Trustee, by reason of said default, have elected and do hereby elect to foreclose the Deed of Trust by advertisement and sale pursuant to ORS 86.705 to 86.815, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the Grantor had, or had the power to convey, at the time Grantor executed the Deed of Trust, together with any interest the Grantor or Grantor's successors in interest acquired after the execution of the Deed of Trust, to satisfy the obligations secured by the Deed of Trust and the expenses of the sale, including the compensations of the Trustee as provided by law, and reasonable fees of Trustee's attorneys

The Sale will be held at the hour of **11:00 AM**, in accord with the standard of time established by ORS 187.110 and pursuant to ORS 86.771(7) on **2/9/2026**, at the following place: **At the front entrance of the Jackson County Courthouse, 10 S Oakdale, Medford, OR**, County of Jackson, State of Oregon, which is the hour, date and place last set for sale.

Other than as shown of record, neither the beneficiary nor the trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to grantor or of any lessee or other person in possession of or occupying the property, except:

Name and Last Known Address                          Nature of Right, Lien or Interest
    **MLM OREGON LLC, AN OREGON LIMITED
    LIABILITY COMPANY**
    712 N Beverly Dr.
    Beverly Hills, CA 90210

Notice is further given that any person named in ORS 86.778 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Deed of Trust reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or Deed of Trust, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Deed of Trust,

2

TS No: 25-15845          Loan No: 5700

together with trustee's and attorney's fees not exceeding the amounts provided by said ORS 86.778. Requests from persons named in ORS 86.778 for reinstatement quotes received less than six days prior to the date set for the trustee's sale will be honored only at the discretion of the Beneficiary or if required by the terms of the loan documents.

The mailing address of the trustee is:
Physical Address:
Ghidotti Berger, LLP
1920 Old Tustin Avenue
Santa Ana, CA 92705

For further information, please contact:
GHIDOTTI BERGER, LLP
c/o Prestige Default Services, LLC
1920 Old Tustin Ave.
Santa Ana, California 92705
Phone: 949-427-2010
Fax: 949-446-1318

Without limiting the trustee's disclaimer of representation or warranties, Oregon law requires the trustee to state in this notice that some residential property sold at a trustee's sale may have been used in manufacturing methamphetamines, the chemical components of which are known to be toxic. Prospective purchasers of residential property should be aware of this potential danger before deciding to place a bid for this property at the trustee's sale.

In construing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to this grantor as well as any other person owing an obligation, the performance of which is secured by the trust deed, and the words "trustee" and "beneficiary" include their respective successors in interest, if any. The Trustee has authorized the undersigned attorney to sign this instrument on behalf of the Trustee. Nothing in this Notice of Default and Election to Sell (this "Notice of Default") should be construed as a waiver of any fees or other amounts owing to Beneficiary pursuant to the terms of the loan documents.

3

TS No: 25-15845          Loan No: 5700

Dated: 9/24/2025

**Ghidotti Berger, LLP**

By: _____
Daniel Ross OSB #112979

State of KING
County of WA

I certify that I know or have satisfactory evidence that **Daniel Ross OSB #112979** (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 9/24/2025

K. Krishna Sudha
(Seal or stamp) Signature

NOTARY PUBLIC
Title

My appointment expires: 03/23/2028

```
KRISHNA SUDHA KARUMURI
Notary Public
State of Washington
Commission # 24016114
My Comm. Expires Mar 23, 2028
```

4

**EXHIBIT "A"**

**REF NO.: 25-15845**

BEGINNING AT A 5/8 INCH IRON PIN AT THE NORTHWEST CORNER OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 38 SOUTH, RANGE 4 WEST OF THE WILLAMETTE MERIDIAN IN JACKSON COUNTY, OREGON, AS DENOTED ON SURVEY NO. 20928 ON FILE IN THE OFFICE OF THE JACKSON COUNTY SURVEYOR; THENCE SOUTH 00°27'47" WEST, ALONG THE WEST LINE OF SOUTHWEST QUARTER OF SAID DESCRIBED SECTION 8, A DISTANCE OF 350.91 FEET TO THE CENTER OF THE ROGUE RIVER, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER BEARS NORTH 00°27'47" EAST, 63.00 FEET; THENCE ALONG THE CENTERLINE OF THE ROGUE RIVER THE FOLLOWING SURVEY COURSES: SOUTH 44°29'20" EAST, 483.08 FEET; THENCE SOUTH 24°58'00" EAST, 164.50 FEET; THENCE SOUTH 11°54'36" EAST, 221.50 FEET; THENCE SOUTH 31°53'35" EAST, 468.00 FEET, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER REFERENCE MONUMENT BEARS SOUTH 89°29'50" EAST, 183.00 FEET; THENCE SOUTH 89°29'50" EAST, BEING PARALLEL WITH AND 120.00 FEET SOUTH OF THE SOUTH LINE OF SAID SECTION 8, A DISTANCE OF 306.83 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 20°42'13" EAST, 654.26 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 80°26'45" EAST, 152.96 FEET; THENCE NORTH 81°35'30" EAST, 16.94 FEET TO THE WESTERLY LINE OF NORTH APPLEGATE ROAD; THENCE ALONG SAID WESTERLY LINE OF NORTH APPLEGATE ROAD THE FOLLOWING SURVEY COURSES: 115.42 FEET ALONG THE ARC OF A 505.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 13°05'44" (CHORD BEARING NORTH 12°54'28" WEST, 115.17 FEET) TO A POINT OF TANGENCY; THENCE NORTH 06°21'36" WEST, 122.39 FEET TO A POINT OF CURVATURE; THENCE 174.14 FEET ALONG THE ARC OF A 170.00 FOOT RADIUS CURVE TO THE LEFT, HAVING A DELTA ANGLE OF 58°41'29" (CHORD BEARING NORTH 35°42'21" WEST, 166.62 FEET) TO A POINT OF TANGENCY; THENCE NORTH 65°03'05" WEST, 322.13 FEET TO A POINT OF CURVATURE; THENCE 289.46 FEET ALONG THE ARC OF A 470.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 35°17'14" (CHORD BEARING NORTH 47°24'28" WEST, 284.91 FEET) TO A POINT OF TANGENCY; THENCE NORTH 29°45'51" WEST, 138.78 FEET TO A 5/8 INCH IRON PIN ON THE NORTH LINE OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 8; THENCE NORTH 89°44'18" WEST, 696.59 FEET TO THE POINT OF BEGINNING.

## TRUSTEE'S NOTICE OF SALE

Loan No: 5700      T.S. No.: 25-15845

Reference is made to that certain deed made by, MLM OREGON LLC, AN OREGON LIMITED LIABILITY COMPANY as Grantor to AMERITITLE, INC, as trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENBOX LOANS INC, ITS SUCCESSORS AND ASSIGNS, as Beneficiary, dated 1/26/2024, recorded 1/31/2024, in official records of Jackson County, Oregon as Instrument No. 2024-002028 (indicated which), covering the following described real property situated in said County and State, to-wit:

**APN: 384W08-00-00707 / 10800099**
SEE ATTACHED "EXHIBIT A"

Property Commonly known as:
15985 NORTH APPLEGATE ROAD
GRANTS PASS, Oregon 97527

Both the beneficiary and the trustee have elected to sell the said real property to satisfy the obligations secured by said trust deed and notice has been recorded pursuant to Section 86.735(3) of Oregon Revised Statutes: the default for which the foreclosure is made is the grantor's:
(i)the installment of principal and interest and escrow amounts, if applicable, which became due on 4/1/2025 , and all subsequent installments of principal and interest and escrow; (ii) late charges; (iii) default interest; advances made by the Beneficiary, plus interest thereon from the date made; (v) attorneys' fees and other expenses and costs of collection; and (vi) trustees and foreclosure fees, costs, and expenses.

By this reason of said default the beneficiary has declared all obligations secured by said deed of trust immediately due and payable, said sums being the following, to-wit: The sum of $2,137,500.00 together with interest thereon at the rate of 9.5 % per annum from 3/1/2025 until paid; plus all accrued late charges thereon; and all trustee's fees, foreclosure costs and any sums advanced by the beneficiary pursuant to the terms of said deed of trust.

Whereof, notice hereby is given that Ghidotti Berger, LLP, the undersigned trustee will on 2/9/2026 at the hour of **11:00 AM**, Standard of Time, as established by section 187.110, Oregon Revised Statues, at **At the front entrance of the Jackson County Courthouse, 10 S Oakdale, Medford, OR** County of Jackson, State of Oregon, sell at public auction to the highest bidder for cash the interest in the said described real property which the grantor had or had power to convey at the time of the execution by him of the said trust deed, together with any interest which the grantor or his successors in interest acquired after the execution of said trust deed, to satisfy the foregoing obligations thereby secured and the costs and expenses of sale, including a reasonable charge by the trustee. Notice is further given that any person named in Section 86.753 of Oregon Revised Statutes has the right to have the foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of said principal as would not then be due had no default occurred), together with the costs, trustee's and attorney's fees and curing any other default complained of in the Notice of Default by tendering the performance required under the obligation or trust deed, at any time prior to five days before the date last set for sale.

I

Loan No: 5700        T.S. No: 25-15845

## TRUSTEE'S NOTICE OF SALE

In construing this notice, the masculine gender includes the feminine and the neuter, the singular includes plural, the word "grantor" includes any successor in interest to the grantor as well as any other persons owing an obligation, the performance of which is secured by said trust deed, the words "trustee" and 'beneficiary" include their respective successors in interest, if any. The Trustee has authorized the undersigned attorney to sign this instrument on behalf of the Trustee.

**Without limiting the trustee's disclaimer of representation or warranties, Oregon law requires the trustee to state in this notice that some residential property sold at a trustee's sale may have been used in manufacturing methamphetamines, the chemical components of which are known to be toxic. Prospective purchasers of residential property should be aware of this potential danger before deciding to place a bid for this property at the trustee's sale.**

**For Sale Information Call: (949) 776-4697 website: https://prestigepostandpub.com**

For further information, please contact:
Ghidotti Berger, LLP
1920 Old Tustin Ave.
Santa Ana, California 92705
Phone: 949-427-2010

Dated: 9/24/2025                                Ghidotti Berger, LLP

Signature By:   Daniel Ross OSB #112979

State of   KING
County of   NA

I certify that I know or have satisfactory evidence that Daniel Ross OSB #112979 (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 09|24|2025

K. Krishna Sudha
(Seal or stamp) Signature

NOTARY PUBLIC
Title

My appointment expires: 03|23|2028

KRISHNA SUDHA KARUMURI
Notary Public
State of Washington
Commission # 24016114
My Comm. Expires Mar 23, 2028

2

**EXHIBIT "A"**

**REF NO.: 25-15845**

BEGINNING AT A 5/8 INCH IRON PIN AT THE NORTHWEST CORNER OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 38 SOUTH, RANGE 4 WEST OF THE WILLAMETTE MERIDIAN IN JACKSON COUNTY, OREGON, AS DENOTED ON SURVEY NO. 20928 ON FILE IN THE OFFICE OF THE JACKSON COUNTY SURVEYOR; THENCE SOUTH 00°27'47" WEST, ALONG THE WEST LINE OF SOUTHWEST QUARTER OF SAID DESCRIBED SECTION 8, A DISTANCE OF 350.91 FEET TO THE CENTER OF THE ROGUE RIVER, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER BEARS NORTH 00°27'47" EAST, 63.00 FEET; THENCE ALONG THE CENTERLINE OF THE ROGUE RIVER THE FOLLOWING SURVEY COURSES: SOUTH 44°29'20" EAST, 483.08 FEET; THENCE SOUTH 24°58'00" EAST, 164.50 FEET; THENCE SOUTH 11°54'36" EAST, 221.50 FEET; THENCE SOUTH 31°53'35" EAST, 468.00 FEET, FROM WHICH A 5/8 INCH IRON PIN WITNESS CORNER REFERENCE MONUMENT BEARS SOUTH 89°29'50" EAST, 183.00 FEET; THENCE SOUTH 89°29'50" EAST, BEING PARALLEL WITH AND 120.00 FEET SOUTH OF THE SOUTH LINE OF SAID SECTION 8, A DISTANCE OF 306.83 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 20°42'13" EAST, 654.26 FEET TO A 5/8 INCH IRON PIN; THENCE NORTH 80°26'45" EAST, 152.96 FEET; THENCE NORTH 81°35'30" EAST, 16.94 FEET TO THE WESTERLY LINE OF NORTH APPLEGATE ROAD; THENCE ALONG SAID WESTERLY LINE OF NORTH APPLEGATE ROAD THE FOLLOWING SURVEY COURSES: 115.42 FEET ALONG THE ARC OF A 505.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 13°05'44" (CHORD BEARING NORTH 12°54'28" WEST, 115.17 FEET) TO A POINT OF TANGENCY; THENCE NORTH 06°21'36" WEST, 122.39 FEET TO A POINT OF CURVATURE; THENCE 174.14 FEET ALONG THE ARC OF A 170.00 FOOT RADIUS CURVE TO THE LEFT, HAVING A DELTA ANGLE OF 58°41'29" (CHORD BEARING NORTH 35°42'21" WEST, 166.62 FEET) TO A POINT OF TANGENCY; THENCE NORTH 65°03'05" WEST, 322.13 FEET TO A POINT OF CURVATURE; THENCE 289.46 FEET ALONG THE ARC OF A 470.00 FOOT RADIUS CURVE TO THE RIGHT, HAVING A DELTA ANGLE OF 35°17'14" (CHORD BEARING NORTH 47°24'28" WEST, 284.91 FEET) TO A POINT OF TANGENCY; THENCE NORTH 29°45'51" WEST, 138.78 FEET TO A 5/8 INCH IRON PIN ON THE NORTH LINE OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 8; THENCE NORTH 89°44'18" WEST, 696.59 FEET TO THE POINT OF BEGINNING.

Postal Class:      First Class
Mail Date:         10/01/2025                                        Sender: Prestige Default Services
Type of Mailing:   ORNTS                                            1920 Old Tustin Ave.
Attachment:        0056621-01 000 20251001 Prestige000402          Santa Ana CA 92705

2       (11)9690024809449213
        LIBBY MARKOWITZ
        493 S ROBERTSON BLVD
        BEVERLY HILLS
        90211

4       (11)9690024809449220
        LIBBY MARKOWITZ
        15985 N APPLEGATE RD
        GRANTS PASS  Oregon  97527

6       (11)9690024809449244
        MLM OREGON LLC, AN OREGON LIMITED LIABILITY  COMPANY
        15985 NORTH APPLEGATE ROAD
        GRANTS PASS, OR 97527

8       (11)9690024809449251
        Occupant
        15985 N APPLEGATE RD
        GRANTS PASS, Oregon 97527

10      (11)9690024809449275
        MLM OREGON LLC, AN OREGON LIMITED LIABILITY  COMPANY
        712 North Beverly Drive
        Beverly Hills, CA 90210

12      (11)9690024809449282
        MLM OREGON LLC, AN OREGON LIMITED LIABILITY  COMPANY
        493 South Robertson Boulevard
        Beverly Hills, CA 90211-3603

14      (11)9690024809449305
        GOLDEN STATE BANK
        870 North Mountain Avenue
        Upland, CA 91786

16      (11)9690024809449312
        MLM OREGON LLC, AN OREGON LIMITED LIABILITY  COMPANY C/O LIBBY F MARKOWITZ
        712 North Beverly Drive
        Beverly Hills, CA 90210

18      (11)9690024809449336
        LIBBY F. MARKOWITZ
        15985 N APPLEGATE RD
        GRANTS PASS  Oregon  97527

Postal Class:       Electronic - Ret
Mail Date:          10/01/2025                                          Sender: Prestige Default Services
Type of Mailing:    ORNTS                                              1920 Old Tustin Ave.
Attachment:         0056621-01 000 20251001 Prestige000402             Santa Ana CA 92705

1       71969002484099869360
        LIBBY MARKOWITZ
        493 S ROBERTSON BLVD
        BEVERLY HILLS
        90211

3       71969002484099869377
        LIBBY MARKOWITZ
        15985 N APPLEGATE RD
        GRANTS PASS  Oregon  97527

5       71969002484099869384
        MLM OREGON LLC, AN OREGON LIMITED LIABILITY  COMPANY
        15985 NORTH APPLEGATE ROAD
        GRANTS PASS, OR 97527

7       71969002484099869391
        Occupant
        15985 N APPLEGATE RD
        GRANTS PASS, Oregon 97527

9       71969002484099869407
        MLM OREGON LLC, AN OREGON LIMITED LIABILITY  COMPANY
        712 North Beverly Drive
        Beverly Hills, CA 90210

11      71969002484099869414
        MLM OREGON LLC, AN OREGON LIMITED LIABILITY  COMPANY
        493 South Robertson Boulevard
        Beverly Hills, CA 90211-3603

13      71969002484099869421
        GOLDEN STATE BANK
        870 North Mountain Avenue
        Upland, CA 91786

15      71969002484099869438
        MLM OREGON LLC, AN OREGON LIMITED LIABILITY  COMPANY C/O LIBBY F MARKOWITZ
        712 North Beverly Drive
        Beverly Hills, CA 90210

17      71969002484099869445
        LIBBY F. MARKOWITZ
        15985 N APPLEGATE RD
        GRANTS PASS  Oregon  97527

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1920 Old Tustin Ave, Santa Ana, CA 92705


A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/30/2026   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Counsel for Debtor(s): Thomas B Ure, tom@urelawfirm.com
Attorneys for US Trustee: Kelly L Morrison, kelly.l.morrison@usdoj.gov
U.S. Trustee (LA): ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page


**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 06/30/2026   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor(s): MLM OREGON, LLC, 493 S. Robertson Blvd., Beverly Hills, CA 90211
Party of Interest: Marvin Markowitz, 15985 N APPLEGATE RD, GRANTS PASS, OR 97527
Party of Interest: LIBBY MARKOWITZ, 15985 N APPLEGATE RD, GRANTS PASS, OR 97527
Lien Holder: Golden State Bank, P.O. Box 430, Upland, CA 91785

☒  Service information continued on attached page


**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 06/30/2026   , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Judge: Hon. Sheri Bluebond, United States Bankruptcy Court, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1534 / Courtroom 1539, Los Angeles, CA 90012


☐  Service information continued on attached page


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| 06/30/2026 | Salina Padilla | /s/ Salina Padilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## CONTINUATION PAGE

| | |
|---|---|
| Debtor: MLM Oregon LLC | Bk Case: 2:26-bk-12319-BB |

MLM Oregon LLC
15985 N APPLEGATE RD
GRANTS PASS, OR 97527

Golden State Bank
Snell & Wilmer, LLP
600 Anton Boulevard, Suite 1400
Costa Mesa, CA 92626-7689

Joshua K. Partington
Snell & Wilmer
600 Anton Boulevard, Suite 1400
Costa Mesa, CA 92626-7689

Nicholas S Couchot
Joshua K. Partington
Snell & Wilmer
600 Anton Boulevard, Suite 1400
Costa Mesa, CA 92626-7689

MLM Grandchildren Irrevocable Trust
493 S. Robertson Blvd.
Beverly Hills, CA 90211

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**